AMBROSE WALDEN AND OTHERS, APPELLANTS, *vs.* HENRY I. BODLEY AND OTHERS, APPELLEES.

There are cases in Chancery where amendments are permitted at any stage or progress of the cause, as where an essential party has been omitted : but amendments which change the character of the bill or answer, so as to make, substantially, a new case, should rarely if ever be admitted, after the cause has been set for hearing ; much less after it has been heard.

A decree dismissing a bill in Chancery, generally, may be set up in bar of a second bill : but where the bill has been dismissed on the ground that the Court had no jurisdiction, which shows that the merits were not heard, the dismission is not a bar to a second bill.

Where parties by agreement dispense with the usual formalities, and no injustice results from the mode adopted, the Court should not on slight ground set aside the proceeding.

It is a general rule that a tenant shall not dispute his landlord's title ; but this rule is subject to certain exceptions. If a tenant disclaims the tenure, and claims the fee in his own right, of which the landlord has notice, the relation of landlord and tenant is put an end to, and the tenant becomes a trespasser ; and he is liable to be turned out of possession, though the period of his lease is not expired.

The same relation as that of landlord and tenant subsists between a trustee and a cestui que trust, as it regards the title.

A Court of Equity cannot act on a case which is not fairly made out by the bill and answer. But it is not necessary that these should point out, in detail, the means which the Court shall adopt in giving relief. Under the general prayer for relief, the Court will often extend relief beyond the specific prayer, and not exactly in accordance with it. Where a case for relief is made out in the bill, it may be given by imposing conditions n the complainant, consistently with the rules of equity, in the discretion of the Court.

ON appeal from the Circuit Court of the United States for the District of Kentucky.

This case was submitted to the Court by Mr. Underwood, for the appellants ; and by Mr. Crittenden, for the appellees, on the argument in the preceding case of Walden *vs.* Craig's heirs et al.

Mr. Justice McLEAN delivered the opinion of the Court.

This is an appeal from the decree of the Circuit Court of Kentucky.

Bodley and others filed their bill in the Circuit Court, representing, that on the 17th of October, 1783, an entry was made in the name of Henry Crutcher and John Tibbs for ten thousand acres of land, as follows : Henry Crutcher and John Tibbs enter ten thousand acres of land on a treasury warrant, No. 18,747, as tenants in common, beginning at a large black ash and small buckeye, marked thus, J. T., on the side of a buffaloe road, leading from the lower Blue Lick, a N. E. course, and about seven miles N. E. and by E. from the said Blue Licks, to a corner of an entry of twenty thousand acres, made in the name of John Tibbs, John Clark, John Sharp, David Blanchard, and Alexander McLean, running thence with the said Tibbs & Co.'s line due east, one thousand six hundred poles ; thence south, one thousand poles ; thence west, one thousand six hundred poles ; thence north, one thousand poles, to the beginning, for quantity.

That in 1790, a legal survey having been executed, a patent was obtained in the names of Robert Rutherford, assignee of Henry Crutcher and Willoughby Tibbs, heir at law of John Tibbs, deceased, in 1790. That by several mesne conveyances the above tract was vested in the complainants.

The complainants represent that Ambrose Walden, the defendant, on the 22d May, 1780, entered one thousand three hundred thirty-three and one-third acres of land on the east side of Jacob Johnson's settlement and pre-emption, on the waters of Johnson's Fork, a branch of Licking, to include two cabins on the north side of said Fork, built by Simon Butler; and to run eastwardly for quantity. This entry was surveyed the 29th November, 1785, after which a patent was obtained.

The bill charges that this entry and survey are void for want of certainty, &c. And that Lewis Craig purchased of Simon Kenton, who was the locator, and claimed one-third of the land entered for his services; which, being laid off, Craig sold several small tracts by metes and bounds, to Jonathan Rose, William Allen, and Charles Rector. That Rose sold a part of his purchase to Abraham Shockey; and Allen a part of his, to Amzey Chapin.

And that Walden, alleging he had satisfied the claim of Kenton as locator, commenced two actions of ejectment in the District Court of the United States for Kentucky, and obtained judgments against the purchasers under Craig. That Shockey and Chapin, knowing the title they held under Craig by purchase from Allen and Rose, was inferior to that of the complainants, became their tenants. That on the 30th October, 1801, the complainants entered into an agreement with Lewis Craig, with the assent of Rose and Rector, for the land they had purchased, and deeds were made to them by the complainants. Shortly after this, Allen sold his land to Abraham Drake, to whom the complainants made a deed.

That the complainants, Bodley and Pogue, purchased Shockey's claim to the land he had bought of Rose, and on which he had erected a valuable mill. And that they still held the legal title to that, and the land purchased by Chapin of Allen, and to a considerable part of the interference of their claim with Walden's.

That twelve years after Walden obtained his judgments he issued writs of habere facias, which were set aside on the ground that the demises had expired. That in 1824, the demises were extended, without notice to the tenants, fifty years. That Rose, Rector, and Allen, and those claiming under them, had possession of their respective tracts of land by metes and bounds, as purchased from Craig, and held under the title of Bodley and Company, for more than thirty years, adversely to Walden. That Shockey and Chapin, and those holding under them, have had possession for near the same length of time, &c.

The complainants state that Walden never has had possession of any part of his survey, except two hundred acres conveyed by him to Robert Pogue, by proper metes and bounds; about one hundred

VOL. XIV.—O

and fifty acres of which was held by Carter: and that the complainants have made valuable and lasting improvements on the land, for which they require pay, if the title should be found in Walden.

And they pray an injunction, &c.; which was granted.

The complainants afterwards amended their bill by stating that Thomas Bodley and Robert Pogue, at the Fleming Circuit Court of Kentucky, in March, 1825, in a suit in Chancery against the unknown heirs of John Walden, deceased, and others, obtained a decree for the whole of Ambrose Walden's survey, except the one hundred and fifty acres owned by Carter; and except so much of John Walden's elder survey of one thousand six hundred sixty-six and two-thirds acres, as was then in the possession of Ann Thrailhild, and the heirs of Jeremiah Proctor, deceased.

And the complainants further state that the tract of one thousand three hundred and thirty-three and one-third acres of Walden, interfered with an entry of twenty thousand acres, made the 31st July, 1783, in the names of John Tibbs, John Clark, John Sharpe, David Blanchard, and Alexander M'Lean, with the proper surveyor; sixteen thousand acres of which were surveyed and patented in the name of the complainant Bodley; and this entry is charged to be paramount to that under which Walden claims.

Walden, in his answer, states, that he obtained judgments against the complainants, who are tenants on the land, by virtue of his legal and better title; and that he has been a long time delayed by the complainants from obtaining the possession of the land recovered.

He admits that some improvements have been made on the land; but alleges that waste has been committed, and that rents and profits would more than compensate for the improvements. He states that he brought his suits in ejectment shortly after the adverse possession was taken; and he relies upon the dismissal of certain injunction bills, filed by the complainants, as a bar to the present suit.

He knows nothing of the entries, surveys, and patents, set forth in the bill, or of the sales and conveyances stated; and he requires proof of the same. He insists on the validity of his own entry; and denies that Kenton, as locator, was entitled to any part of it, as he was paid in full for his services in locating the land. He denies all fraud; and prays the benefit of his judgments at law.

By agreement of the parties in the Circuit Court, "the record and proceedings of the Fleming Circuit Court were filed, and that cause was entered upon the docket, for further proceedings in this Court. And that in the suits for trial, Thomas Bodley and others against Ambrose Walden, and Clark's heirs against Ambrose Walden, and also the one by Duncan's heirs against Walden, should be entered on the docket, and stand for hearing at the ensuing term, and be decided at the same time; they all being connected with the present controversy."

Bodley and Pogue having died, at November term, 1833, by consent, the suit was revived in the names of their heirs and representatives; and a guardian ad litem was appointed to certain infant heirs.

A motion is made by the defendants in the appeal, to dismiss it, on the ground " that it is an appeal from several distinct decrees, in several separate suits, which are attempted to be united in this appeal ; when there is no such record filed as is described in the appeal and citation thereon."

In the decree of the Circuit Court, it is stated, that by consent of the parties, the suits above named were to be heard at the same time; and the papers and pleadings filed in one case should be considered and have full effect in all the cases, to enable the Court to decide the controversies in all the cases on their respective merits." And it was expressly agreed, " that the bill, answers, and orders, the entries, surveys, and patents, in the case of Bodley and Pogue, should be sufficient, without recording the whole suits and papers in each of the cases; and that in the event of either party appealing, the clerk may copy all the papers in all the records; and that when they are so copied and certified, the transcript shall have the same effect as if there were full and separate records made out in each and all of the cases : and this agreement was declared to be entered into, with the leave of the Court, to avoid expenses in the cases, as they all involve the same questions."

These agreements cover the apparent irregularities in the record, as it regards the decrees and the proceedings in the different cases stated ; and obviate the objections on which the motion to dismiss is founded.

And a further motion is made, to dismiss the appeal as to all the parties named in the citation, who are not parties to the decrees.

The names in the citation are found on the record, as parties to one or more of the several decrees entered. It is very clear, that the parties to the decrees only can be made responsible for the costs of this appeal.

Before the decrees were pronounced in the Circuit Court, by consent of the parties, it was entered upon the record, that every agreement or admission on file, for the preparation of any one of the cases for hearing, shall extend to all of them. And it was admitted, that the complainants were respectively invested with the titles under the entries of Peter Johnson and Tibbs, and Clark and Tibbs, and Crutcher, as alleged in their several bills. And it was agreed, " that the Court should give a final decree, without further ascertainment of the boundaries or positions of the particular tracts or settlements of each claimant or person interested ; and that the principles thereof shall be carried into effect as fully as if each tenement and each proprietor were specially named and identified."

The entries involved in this proceeding were brought before the Court in the case of Bodley et al. *vs.* Taylor, 5 Cranch, 191 ; and in their decision, in regard to Walden's entry as well as the others, the Circuit Court followed the decision of this Court.

It is true, the validity of these entries is brought before the Court now by different parties; and the former decision having been made between other parties, and on a state of facts somewhat different

from that now before us, does not settle, conclusively, the question in this case. But in looking into the evidence, it is found that the controlling call of Walden's entry is proved by Kenton and others; and that the effect of this evidence is not shaken by the testimony on the other side. The calls of the entries are specific and notorious. Indeed, there seems to be little or no contest between the parties on this ground; nor as to the survey of Walden's entry, as directed by the Circuit Court.

This entry being older and paramount to the other conflicting entries, it was held to be good: but as the subsequent entries were made before Walden's entry was surveyed, it was, very properly, directed to be surveyed strictly in conformity to its calls.

This mode of survey reduced the claim of Walden several hundred acres below the calls of his original survey. And for the land lying outside of this last survey, and within the original one, the Circuit Court decreed that he should relinquish the possession, and release to the complainants, respectively, by metes and bounds stated, the tracts covered by their titles.

Commissioners were appointed to ascertain the value of the improvements made by the tenants on the lands recovered by Walden; the value of the rents and profits; the value of the land without the improvements; and whether waste had been committed, &c. A report was made by the commissioners, which, on motion of the complainants, was set aside, and another order to the commissioners was made. And afterwards, no steps having been taken by the complainants to execute the order, the injunction was dissolved, without prejudice to the complainants, for any claims they might have for improvements; but the Court refused to decree releases from the tenants to Walden of their claim; and also to order a writ to the marshal, directing him to put Walden in possession of the land recovered.

The Circuit Court, it appears, after the final decree was entered, set it aside at the same term, and entered decrees in each of the cases. After the original decree was set aside, and before separate decrees were entered, the defendant moved the Court for leave to file several answers to the cases placed on the docket by agreement, and also a cross bill; which the Court refused. And we think that this application to change the pleadings after the hearing, and under the circumstances of this case, was very properly rejected.

There are cases where amendments are permitted at any stage of the progress of the case; as where an essential party has been omitted; but amendments which change the character of the bill or answer, so as to make substantially a new case, should rarely, if ever, be admitted after the cause has been set for hearing, much less after it has been heard.

On the part of the appellant, it is contended, that the first and second injunction bills which were filed in this case, before the present one, and which were dismissed, constitute a bar to the relief sought by the present bill.

[Walden et al. *vs*. Bodley et al.]

The controversy in this case, by various causes, has been protracted more than forty years. The judgments in the ejectment cases were obtained in 1800. In the same year, and shortly after the judgments were rendered, Bodley, Hughes and others, obtained an injunction. This bill was dismissed by the Court, in 1809, for want of jurisdiction.

In 1811, another bill was filed, on which an injunction was allowed; and which, at May term, 1812, was dissolved. The bill was afterwards dismissed, by the complainants, at rules, in the clerk's office. On the dissolution of this injunction, writs of habere facias possessionem were issued for the first time; and these, after being stayed by order of the judge, were quashed at July term, 1813, on the ground that the demises had expired.

The demises were laid, commencing in 1789, for ten years; so that they had expired before the judgments were obtained.

In 1817, a motion was made to extend the demises, which was overruled. But the question was brought before this Court, which decided they had no jurisdiction of the case, but gave an opinion favourable to the amendment; which induced the Circuit Court, in 1824, to extend the demises to fifty years.

In the year 1825, the present bill was filed, on which an injunction was issued to stay proceedings on the judgments, which was continued until the final decree of the Circuit Court.

As the first bill was dismissed for want of jurisdiction, and the second by the complainants, at rules, in the clerk's office, it is clear that neither can operate as a bar to the present bill. A decree dismissing a bill generally, may be set up in bar of a second bill, having the same object in view; but the Court dismissed the first bill on the ground that they had no jurisdiction, which shows that the case was not heard on its merits. And this also appears from the dismissal by the party, of the second bill, in the clerk's office.

I also insisted, that the decrees of the Circuit Court should be reversed, on the ground that there is an improper joinder of parties.

Were it not for the agreements on the record, the decrees entered in the different cases would be wholly irregular, and of course, unsustainable. Different interests and parties are united, and a decree is made in each case, which determines the matters of controversy in each. But the agreement of the parties spread upon the record, and that which is stated by the Court, and the fact of all the causes being brought to a hearing and submitted at the same time, afford the most satisfactory evidence of the assent of the parties, and the waiver of all objection to the irregularity of the proceeding. And we are inclined to this view, from the consideration, that by this mode of procedure, the rights of the parties concerned could in no respect be prejudiced. They were as susceptible of as distinct an investigation and decision, as if the pleadings had been fully made up in each case, and it had been heard separately.

Where parties by agreement dispense with the usual formalities in the progress of a cause; and no injustice results from the mode

o 2       21

adopted, the Court should not, on slight ground, set aside the proceeding.

It is contended, that as the complainants, or at least some of them, entered under the title of Walden, as purchasers from Craig, the principle of landlord and tenant applies; at least so far as to prevent the setting up of a title adverse to that under which they entered.

Craig claimed a certain part of the entry of Walden, as purchaser under Kenton, the locator; and he sold to some of the complainants: but as his title was not sustained, the purchasers under him become interested in the entries of Bodley and others, and received conveyances from them.

It is a general rule, that a tenant shall not dispute his landlord's title; but this rule is subject to certain exceptions. If a tenant disclaims the tenure, and claims the fee in his own right, of which the landlord has notice, the relation of landlord and tenant is put an end to, and the tenant becomes a trespasser, and he is liable to be turned out of the possession, though the period of his lease has not expired. 3 Peters, 47. The same relation as that of landlord and tenant subists between a trustee and the cestui que trust, as it regards the title. In the case of Botts *vs.* Shields' heirs, 3 Lit. 34, 35, the Court of Appeals decided that a purchaser of land, who enters into the possession of it under an executory contract, shall not set up another title. But a purchaser who has obtained a conveyance, holds adversely to the vendor, and may controvert his title. 4 Lit. 274.

It appears from Kenton's deposition, that he was paid in land warrants for making Walden's entry, and that he had not, in fact, a shadow of right to any part of this land. He assigned the contract with Walden to locate the land to Fox and Wood; and afterwards paid them in discharge of this contract, by a conveyance of land, located by the land warrants received from Walden; but the contract was not surrendered nor cancelled. So that Craig, as purchaser, procured neither the equitable nor legal title to any part of the land in Walden's entry.

The claim of Craig appears to have been purchased by Bodley and others, who at the time claimed under conflicting and adverse entries to that of Walden, with the assent of the first purchasers from Craig; and then deeds were executed to them.

The original purchasers from Craig, who afterwards received deeds from Bodley and others, are deceased; and the lapse of time, and change of circumstances, have been so great, that we do not think the complainants, or any part of them, can be precluded on the ground of their purchase from Craig, from setting up a title adverse to that of Walden's. The persons who entered under Craig were in fact, trespassers; for they had no title which could protect their possession, or shelter them from the consequences of wrong-doe.s. But on this point we go no further than to say that such an entry, under the circumstances of this case, does not preclude

he complainants from relying on the adversary titles set up in their bill. Whether any other effect may result from this entry, as it re- gards any other right than the title asserted in the bill, we do not decide.

The counsel for the appellant contend, that the decree of the Cir- cuit Court should be reversed, on the ground that, although Walden was decreed to release his title to such parts of the land covered by his original survey, and not included in the survey of his entry under the order of the Court, yet the tenants on the land to which Walden had the better title were not required to execute releases of their title to him.

But we think there is no error in the decree in this respect.

Walden had the elder legal title for the land included in his first survey; it was therefore necessary to decree a conveyance or release from him to the tenants who established a paramount equitable title. But as to the land within the corrected survey, he had the elder equitable as well as legal title; it was therefore unnecessary to decree releases from the tenants, who, from facts before the Court, had neither the equitable nor legal title.

There are other considerations which show the correctness of the decree in this respect.

The tenants in possession were not parties to the suit; and the Court did not know the nature or extent of their right. It was clear, that so far as their right was made known to the Court by the bill and answer, they had no title to release. Not being parties to the suit, it is very clear that the Court could not divest them of any in- terest which was not divested, as a legal consequence of the reco- very of the ejectment suits.

Forty years have nearly elapsed since Walden recovered his judg- ments. Delays, perhaps without precedent in this country, have oc- curred in realizing the fruits of these judgments. To some extent, these delays may be attributed to the expiration of the demises; but they are chiefly to be ascribed to the injunctions which have been granted. And now the demises, though extended fifty years from 1789, have again expired.

And it appears from the records in the ejectment cases, which are before us as evidence, that the decease of some of the defendants renders a revivor of the judgments necessary before writs of posses- sion can be issued.

When the final decree was entered in the Circuit Court, the de- mise had some years to run; and that Court, we think very pro- perly, refused to decree a surrender of the possession by the tenants to Walden, but dissolved the injunction. This, under ordinary cir- cumstances, would have given to Walden all the relief he could ask; and, as was said by the counsel for the complainants, all the relief he prays for in his answer. But new and unexpected delays have occurred, until the demises have expired; and the judgments have become dead by the decease of a part of the defendants.

And a question here arises, whether, on the affirmance of the de-

crees of the Circuit Court, it is not the duty of this Court, under the circumstances of this case, to direct the Circuit Court to have the value of the improvements estimated, the rents and profits ascertained, and also any damage which may have been done to the land; and then, under an order or decree that the tenants should relinquish the possession to Walden, to issue a writ of possession, in pursuance of the practice of a Court of Chancery in Kentucky.

This in effect would be the same as the decree of the Circuit Court; and it would seem that it is the only effectual mode by which this protracted controversy can be terminated within any reasonable time. The remedy at law is obstructed by the expiration of the demises, and the death of defendants in the judgments. And if this Court have the case before them so as to send it down with the above directions, we think they are bound to do so. It would be a reproach to the administration of justice, if in this case the parties should be left by the decision of this Court, apparently, as remote from a final determination of it as they were forty years ago.

It is true, the answer prays merely for a dissolution of the injunction, and that the bill may be dismissed. But the Court have, by the bill, answer, and evidence, the equities of the parties before them; and having jurisdiction of the main points, they may settle the whole matter. A Court of Equity cannot act upon a case which is not fairly made by the bill and answer. But it is not necessary that these should point out, in detail, the means which the Court shall adopt in giving relief. Under the general prayer for relief, the Court will often extend relief beyond the specific prayer, and not exactly in accordance with it. Where a case for relief is made in the bill, it may be given by imposing conditions on the complainant consistently with the rules of equity, in the discretion of the Court.

In their decree, the Circuit Court required Walden to surrender the possession of the land he was directed to release to the complainants; and the Court had, unquestionably, the power to decree a surrender of the possession to Walden, by the tenants of the land recovered by him. This was not done, it is presumed, because it was thought the possession could be obtained under the judgments, on the dissolution of the injunction. But this, for the reasons stated, cannot now be done. The remedy under the judgments, as they now stand, must be attended with additional expense and delay; and having the case before us, we think it is our duty to put an end to this controversy.

Forty years ago Walden recovered the land by virtue of his legal right; and we now decide in favour of his equity. He should, therefore, have the aid of the Court in attaining the object he has so long and so perseveringly pursued; and that without unnecessary delay.

Being satisfied with the decrees made in the cases stated by the Circuit Court, they are affirmed with the following modification: The cause will be sent down to the Circuit Court, with directions to take such steps in regard to the improvements, and to the putting

of Walden or his representative in possession of the premises recovered in the ejectment suits; as shall be conformable to the decrees affirmed, and the principles of equity.

And as it regards any title or claim which the tenants or any part of them may set up under the statute of limitations; as the proper parties are not before us, nor the necessary facts, we do not decide on such title or claim.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Kentucky, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this Court, that the decrees of the said Circuit Court in the cases stated by the said Circuit Court, be, and the same are hereby, affirmed; with the modification, that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to that Court to take such further steps in regard to the improvements, and to the putting of Walden or his representative in possession of the premises recovered in the ejectment suits, as shall be conformable to the decrees hereby affirmed, and to the principles of equity.