RICHARD WALDEN AND OTHERS, HEIRS AND REPRESENTATIVES OF AMBROSE WALDEN, DECEASED, APPELLANTS, *v.* THOMAS BODLEY'S HEIRS AND REPRESENTATIVES, ROBERT POGUE'S HEIRS AND REPRESENTATIVES, AND OTHERS.

### SAME *v.* SAME.

This court having sent a mandate to a Circuit Court to put a party into possession of certain lands which were the subject of an ejectment suit, it was right in the Circuit Court not to extend the possession further than the land originally recovered in ejectment; although other lands were afterwards drawn into the controversy.

Where a defendant in ejectment aliens the property in dispute whilst the proceedings are pending, a possession by the vendee will not justify a plea of the statute of limitations. This court having issued an order, after the expiration of the demise, that the Circuit Court should place the plaintiff in possession, such an order proceeded on principles governing a court of equity, and the Circuit Court was bound to conform to it.

THESE two cases were brought up by appeal, from the Circuit Court of the United States for the District of Kentucky.

The cases were exceedingly complicated, and cannot be understood without a reference to the following plat.

The history and facts of the case are given so much in detail in the opinion of the court, that it is unnecessary to do more than refer the reader to that opinion, as delivered by Mr. Justice Catron.

It was argued by *Mr. Underwood* for the appellants, and *Mr. C. S. Morehead* for the appellees. The only question was, whether or not the Circuit Court had properly executed the mandate of this court, and the arguments of the counsel are noticed with sufficient clearness in the opinion of the court, as well as the facts in the case.

Mr. Justice CATRON delivered the opinion of the court.

These two cases were appeals from the Circuit Court of the United States for the District of Kentucky, sitting as a court of equity. They were in fact one case, and will be treated as such.

The question was, whether the Circuit Court had properly executed the mandate of this court issued after the decision in

a cause between the same parties at January term, 1840, and reported in 14 Peters, 156. The judgment of this court in the ejectment suit between Walden's lessee and Craig's heirs, involving the same title, settled the questions raised therein, and was final.

The ejectment case will be found in 14 Peters, 147. The present difficulty arose from the execution of the mandate of this court in the chancery suit.

In order to give a clear understanding of the nature of the dispute, it is necessary to refer to the plat, and disembarrass it of all the locations which are unconnected with the present appeal. After explaining the pretensions of the appellant, it will become necessary to give an historical narrative of the case in all its diversified aspects, because the grounds of defence relied upon by the appellee cannot be understood without such an explanation. The dispute was of very long standing. The title of Walden was collaterally brought before this court in 5 Cranch, 191, then directly in 9 Wheaton, 576, 14 Peters, 156, and now reappears in 9 Howard.

The mandate issued in 1840 will be more fully stated hereafter. At present it is only necessary to say, that it commanded the Circuit Court to take such further steps in regard to the putting of Walden in possession of the premises recovered in the ejectment suits as should be conformable to the decree hereby affirmed, and to the principles of equity.

The appellant Walden complained that the Circuit Court had not put him in possession of the tracts of land marked A, B, and C, which it ought to have done, bounded as follows:—

A. 1, *a*, *b*, 4, 5, 6, 11, 1.

B. 15, 14, 5, 6, 11, 15.

C. 11, 30, 31, 32, 11.

Each of these pieces of land had its separate defence. A brief explanation of the plat now becomes necessary.

The double lines 23, 24, 25, 26, are the lines of Walden's entry, as the same were laid down by a surveyor under the order of this court, and therefore Walden could recover nothing outside of them.

7, 8, 9, 10, are the lines of his original patent, as laid down by him.

The dotted lines 1, 2, 3, 9, represent the locator's or Craig's part. But as these lines include land outside of the entry, they must be made to conform to it, and therefore assume an irregular figure, running from 1, *a*, *b*, *d*, *c*, 2, 1.

It will be explained hereafter upon what grounds the defendants claimed to hold A, B, and C on the accompanying plat.

To return to the history of the case.

1780, entry by Walden.

1783, entry by Bodley's grantors.

1785, survey by Walden.

1790, survey by Bodley's grantors.

In March, 1797, Walden brought an action of ejectment for a tract of land lying on the waters of Johnson's Fork of Licking River in Mason County. The action was brought in the District Court of the United States for the Kentucky District. The declaration stated a demise for the term of ten years from the 15th day of August, 1789.

In March, 1798, Lewis Craig and Jonathan Rose were substituted in place of the casual ejector, confessing lease, entry, and ouster.

In June, 1800, a special case was submitted to the court, accompanied with a survey. From these documents, it appeared that a division of the land covered by Walden's patent had been made in February, 1794; that two thirds of it had been assigned to Walden, and the remaining third to Craig, as assignee of Simon Kenton, the locator; and that the defendants in the ejectment were in possession of that part which had been given to the locator.

The case was submitted to the court upon this agreed state of facts.

On the 19th of June, 1800, the court gave judgment for Walden, the plaintiff in ejectment.

In August, 1800, Walden sued out a writ of *habere facias possessionem* upon this judgment. This writ was arrested by an injunction, and returned unexecuted; and again renewed in 1811, as will be mentioned in chronological order.

In September, 1800, Bodley and others filed a bill upon the equity side of the court, and obtained an injunction. This bill is nowhere found upon the record, and its contents cannot be more particularly stated.

In May, 1809, this bill was dismissed for want of jurisdiction.

On the 5th of September, 1811, the execution which had been taken out by Walden in 1800 was returned, and another writ of *habere facias possessionem* issued upon the 14th of September.

In the latter part of September, 1811, Bodley and others filed another bill, and obtained a second injunction to stay further proceedings upon the judgment in ejectment.

At May term, 1812, the injunction was dissolved, on hearing on bill, answers, depositions, and exhibits, and in April, 1813, the complainants dismissed their bill.

On the 2d of June, 1812, Walden sued out another writ of *habere facias possessionem*, which was superseded, on the 8th of June, upon two grounds; namely, that no execution ought to have issued, on account of the lapse of time after the rendition of the judgment, and because the demise laid in the declaration had expired before the judgment was given.

At July term, 1813, the writ was quashed.

In August, 1817, a rule was laid upon the defendants, Craig and Rose, to show cause why the demise in the declaration should not be extended.

On the 22d of May, 1819, Walden took out another writ of *habere facias possessionem*, which was afterwards quashed by the court.

At November term, 1821, the rule came up for argument, when the court overruled the motion to extend the demise. Walden sued out a writ of error, and brought this judgment up to this court to be reviewed. It came up for argument at February term, 1824, and is reported in 9 Wheaton, 576. This court having expressed its opinion that the motion to extend the demise ought to have prevailed in the Circuit Court, leave was granted by the Circuit Court, at the ensuing May term, to amend the declaration by extending the demise to fifty years.

In March, 1825, Bodley and Pogue obtained a decree against Walden in the Fleming Circuit Court of Kentucky (State court), upon a bill which they had filed against him to prevent him from proceeding further in his action of ejectment. The decree was founded upon the superior equity in the claim of Bodley and Pogue, inasmuch as Walden's survey in 1785 interfered with the prior entry of the grantors of Bodley and Pogue, in 1783.

In 1825, Bodley and Pogue filed a bill in the Circuit Court of the United States, into which court were removed all the proceedings of the Fleming Circuit Court just mentioned. Upon this bill an injunction was granted, prohibiting Walden from proceeding further under his judgment in ejectment. Walden answered, and afterwards filed a cross-bill and an amended cross-bill.

In 1833, the suit was revived by consent, in the names of the heirs and representatives of Bodley and Pogue, who had died.

In May, 1835, Thomas Blair, who claimed under Pogue, filed a petition in the Circuit Court to reverse and annul the order extending the demise, upon the ground that the order was surreptitiously obtained and improvidently made.

In May, 1836, the court overruled this motion to annul the extension of the demise.

On the 18th of November, 1836, Walden sued out a writ of *habere facias possessionem* for a part of the land claimed in the original ejectment. On the ensuing day, being the 19th of November, the defendant's counsel moved to quash this writ, upon the ground, amongst other reasons, that it was irregular to issue the writ without a previous *scire facias*, because the judgment had been obtained twenty years before. On the 21st of November, the court quashed the writ.

In March, 1837, Walden sued out a *scire facias* to revive the judgment. Blair was made a defendant, as tenant in possession. The defendants demurred to the *scire facias*, and also pleaded *nul tiel* record. The court gave judgment for the defendants upon the demurrer and the plea, and the case was brought up to this court by a writ of error. It was decided at January term, 1840, and is reported in 14 Peters, 147.

In the mean time, the bill filed in the Circuit Court by Bodley and others, in 1825, had ripened into a decree. After various proceedings, the Circuit Court, at November term, 1834, decreed, that Walden had the superior equity to all the land included within the double black lines, and numbered 23, 24, 25, 26, and that for other lands lying outside of these lines, and within the lines of his patent, he should execute deeds to the complainants.

Upon the subject of damage and waste, rents and profits, and improvements, the court appointed commissioners to go upon the land and make assessments.

At May term, 1836, the report of these commissioners was quashed, and other commissioners appointed.

This decree of the Circuit Court was appealed from by Walden, brought up to this court, and is reported in 14 Peters, 156. The decree of the court below was affirmed, and the cause returned with the following mandate: —

" Whereas, lately, in the Circuit Court of the United States for the District of Kentucky, before you, or some of you, in a cause between Thomas Bodley's heirs, Robert Pogue's heirs, and others, complainant, and Ambrose Walden, defendant, the decree of the said Circuit Court was in favor of the said complainants, and against the defendant, as by the inspection of the transcript of the record of the said Circuit Court, which was brought into the Supreme Court of the United States by virtue of an appeal, agreeably to the act of Congress in such case made and provided, fully and at large appears. And whereas,

in the present, term of January, in the year of our Lord one thousand eight hundred and forty, the said cause came on to be heard before the said Supreme Court on the said transcript of the record, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decrees of the said Circuit Court be, and the same are hereby, affirmed, with the modification that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to that court to take such further steps in regard to the improvements, and to the putting of Walden or his representative in possession of the premises recovered in the ejectment suits, as shall be conformable to the decree hereby affirmed, and to the principles of equity.

" You, therefore, are hereby commanded, that such further proceedings be had in said cause as according to right and justice and the laws of the United States ought to be had, the said appeal notwithstanding.

" Witness the Honorable Roger B. Taney, Chief Justice of said Supreme Court, the second Monday of January, in the year of our Lord one thousand eight hundred and forty.

" WM. THOS. CARROLL,
*Clerk of the Supreme Court of the United States.*"

Upon the receipt of this mandate, the Circuit Court took steps to execute it by granting leave to both parties to take depositions, ordering the surveyor to amend his survey, if necessary, and report matters of fact specially.

At November term, 1841, Walden's death was suggested, and a bill of revivor filed on behalf of his heirs, which included a prayer to revive the proceedings in the suit wherein Walden was defendant, to which the mandate referred, and also the proceedings under the cross-bill which had been filed by Walden. Whereupon, subpœnas were issued to bring fifty-six parties into court, who were the representatives of Bodley, Pogue, and the other persons whose interests were opposed to Walden.

After another bill of revivor, and another amended bill, and sundry other proceedings, the cause came before the Circuit Court for final adjudication at May term, 1847. The court ordered the heirs of Walden to be placed in possession of several of the pieces of land claimed, but refused to give them those pieces marked upon the preceding plat with the letters A, B, and C. An appeal was taken from this decree by the heirs of Walden, and the correctness of this refusal by the Circuit Court was the question brought up by the appeal.

As each one of the tracts A, B, C, had a different defence, it will be necessary to enumerate them in order.

A. The judgment of the Circuit Court respecting this tract was as follows, viz. : —

"It seems to the court that the heirs of Walden are not entitled to obtain, by this proceeding against John N. Proctor, the possession of the parcel of land designated on the plat of the survey by the letters and figures 1, a, b, 4, 5, 6, 11, 1 ; it was acquired of one of the complainants in the original bill, but at a time when there was no litigation pending. Jonathan H. Rose purchased this land in 1814 of Jonathan Rose, then in possession for upwards of seven years under a junior patent, and thereupon took possession, and resided upon it until he sold it to Proctor, the defendant, who resided upon it until about the time of the commencement of this proceeding, when he sold it to Kincaid, now in possession. And it seems to the court that the possession so held by Jonathan H. Rose, and his successor, Proctor, for upwards of seven years before the original bill in this case was filed, and upwards of twenty years before he was in any wise a party to any litigation concerning the land, does constitute a bar under the statute of limitations, and that this part of the case is within the exception of the decree and mandate of the Supreme Court, and that the Waldens are not, upon the principles of equity, entitled to have the possession of this part of the land ; and therefore their bill and proceedings in respect to it are dismissed."

It will be perceived by a reference to the plat, that the whole of this tract of land lies within both Walden's entry and patent, and also within what was called the locator's part. This court in 1840 decided that Walden's title was good to all the land included within his entry, namely, all included within the double black lines; and decided also, that Craig's title, claimed under Kenton, the locator, was not valid. 14 Peters, 162. It remains to trace the title claimed under the defence of limitations.

The title adverse to Walden's is thus traced by the counsel for Proctor, the present occupier and claimant.

After the expiration of the demise in said Walden's declarations, namely, in the latter part of the year 1800, as your petitioner is advised, Rose, the tenant in possession, purchased the land claimed by said Walden from Bodley and Pogue, who claimed under a patent in the name of Tibbs & Co. for 10,000 acres of land, posterior in date to that of said Walden, and adverse thereto, for which he held the bond of said Bodley and Pogue for 131 acres, which bond was satisfied by the execution of a deed, September, 1821.

Between the years 1814 and 1819, and while the said de-

mise continued dead, your petitioner believes about the year 1816 or 1817, said Rose sold by executory contract the said tract of land to his son, Jonathan H. Rose, and delivered the possession thereof to him; and the said Jonathan H. Rose continued on said land, and was in fact the terre-tenant at the date of the extension of the demise, namely, the 8th of May, 1824; and the said Jonathan H. had no notice or knowledge whatever of said extension, but the whole proceeding as to him was *ex parte.* And your petitioner states, that, during the year 1826, he purchased by bond of said Jonathan H. Rose, and took possession of said land in March, 1827; and shortly afterwards received a deed therefor from said Rose, without any knowledge on his part of the extension of said demise, and when, as he is advised, the title of said Rose had ripened into a complete estate.

The said Lewis Craig was not a terre-tenant, but was entered defendant with Rose on account of his sale to said Rose of the land in contest.

It was upon the 2d of July, 1827, that Jonathan Rose executed a deed, with special warranty, to Jonathan H. Rose; and on the 22d of February, 1828, Jonathan Rose and Jonathan H. Rose united in a deed to Proctor. The *habendum* of the deed was as follows: —

"'To have and to hold the land hereby conveyed, and the appurtenances, unto the said Proctor, his heirs and assigns, for ever. The said Jonathan Rose only conveying, without warranty, a life estate which he held by virtue of a lease from said Jonathan H. Rose; and the said Jonathan H. Rose, for himself, his heirs, executors, and administrators, the aforesaid tract of land and premises unto the said Proctor, his heirs or assigns, against the claim or claims of all and every person or persons whatsoever, so far as to refund the purchase money without interest in case said land should be lost by a better claim than the one thereby conveyed, does and will for ever defend by these presents.''

At the time of the last survey, this tract of land appeared to have passed into the possession of a person by the name of Kincaid; by what conveyance the record did not show.

B. The judgment of the Circuit Court with regard to the tract of land marked B was as follows: —

"It seems to the court that the heirs of Walden are not entitled to obtain, by this proceeding against Blair, the possession of the parcel of land in his possession, which is designated in the report of the surveyor by the figures 15, 14, 5, 6, 11, 15, and as containing fifteen acres, one rood, and seven poles. It

was purchased, and the possession obtained, from one of the original complainants in the original bill, but there was no suit pending for it or against it, and its possession cannot be affected by any subsequent litigation between parties out of its possession.   Tilton and Huston purchased it in the year 1813 of Robert Pogue, then in the possession, with his title under the junior patent, for upwards of seven years, and thereupon they took the possession ; since which time it has been held in continued possession by them and their vendee, and his vendee, down to Blair, the defendant, now residing upon it ; each and all holding adverse to Walden.   And it seems to the court that this length of adverse possession, upwards of seven years before the original bill, of which this proceeding is the sequel, was filed, and upwards of twenty years before Blair, or any other person in possession, became in any wise a party to the suit, or to any proceedings in respect to it, does constitute a bar under the statute of limitations, and that this part of the case is within the exceptions in the mandate, and the bill and proceedings of the Waldens, in respect to this part of the land, are dismissed ; and this disposes of all the land for which judgments were recovered in the ejectment suits."

The origin of Blair's title to this piece of land is thus stated by himself in his answer, in 1837, to the cross-bill, amended cross-bill, and bill of revivor, filed against him and others by Walden's heirs.

" This respondent has no personal knowledge whatever of the progress and movement in the various suits referred to, or of the derivation of Fitzgerald's title ; but he is informed, and charges, that after the expiration of the demises in said Walden's declaration, and before the renewal thereof, that said Shockey sold the land in contest to Robert Pogue, who claimed it previously under the patent in the name of Tibbs, &c.; for ten thousand acres of land, posterior in date to that of Walden, and adverse thereto ; and said Pogue, who purchased in order to unite the conflicting claims in himself, then took possession of said land in contest, and continued the possession in himself until about the year 1814, when he sold the same to Tilton and Huston, who then entered and held the possession for two or three years, and then sold to Hambrick, who continued in possession until the demise was entered, and until he sold and delivered the possession of the same to your respondent."

In April, 1813, Pogue gave a bond of conveyance for this land to Tilton and Huston.   In April, 1816, this bond was assigned to Hambrick, who assigned it to Fitzgerald.   About the year 1829, Pogue gave a deed of it to Fitzgerald, and on the

20th of September, 1832, Fitzgerald conveyed it to Blair by a deed, the *habendum* of which was as follows : —

" To have and to hold the said tract or parcel of land above described, together with all and singular the privileges and appurtenances thereunto belonging, or in any wise appertaining to the same, unto the said Thomas Blair, his heirs and assigns, for ever, and to their only proper use and benefit and behoof. And the said Benjamin Fitzgerald, for himself, his heirs, executors, and administrators, doth hereby covenant to and with the said Thomas Blair, his heirs, executors, and administrators, that in case the land hereby conveyed shall be taken or lost by any better or prior claim, that in that event the said Fitzgerald will refund to him, the said Thomas Blair, the purchase-money thereof, without interest."

C. The judgment of the Circuit Court as to the tract of land marked C was as follows : —

" The Waldens have not, however, limited their claim in this proceeding to the boundaries of the four hundred acres of land which have been given as the limits of the lands recovered in the actions of ejectment, but have insisted that these judgments were for all the land within the patent of their ancestors, for 1,333 acres; and that, whether this position be sustained or not, they are entitled, on the decree and mandate of the Supreme Court, to have themselves put in possession of all the land within, and common to, the patent and entry of their ancestor, as established by the decree of this court, to which it is not shown some other person has the superior title ; and they prayed on the hearing for process by which to have such possession delivered to them. Their prayer is overruled, and this proceeding dismissed as to Blair, and all the other parties, in respect to all the lands without the boundary of the land covered by the judgments in ejectment, designated on the plat as first herein stated.

" It is, however, provided, that neither these orders, nor what may be done in consequence of them, shall prejudice the rights of any of the parties, or their representatives, in the abovementioned actions of ejectment, or in the suit in chancery, of which this proceeding is a continuation, who are not now properly before the court. It is ordered that an account be taken of the improvements, and of the rents and profits and damages, of each of the three above-described parcels of land, of which, according to the above opinion, the Waldens are to have the possession. John C. Herndon is appointed the master for this purpose."

It will be perceived by a reference to the mandate of this

court, which is above recited, that the Circuit Court was instructed "to take such further steps in regard to the improvements, and to the putting of Walden or his representative in possession of the premises recovered in the ejectment suits, as shall be conformable to the decree hereby affirmed, and to the principles of equity."

It is necessary to refer to the ejectment suits to see what premises were recovered.

The original ejectment, brought in 1797, was in very general terms, for 415 acres of land. After the substitution of Craig and Chapin as defendants, instead of the casual ejector, the court ordered a survey of the premises according to the claim and pretensions of the respective parties. The defendants took defence for all the land included within the locator's part, as will be seen by the following special case and judgment of the court. The letters A, B, C, D are represented in the plat in this statement by the figures 7, 8, 9, 10, and the letters E, F, G, C, by the figures, 1, 2, 3, 9.

"And afterwards, to wit, at the June term of the court aforesaid, to wit, on the 19th day of June, A. D. 1800, the following special case was submitted to the court, by consent of the parties herein, by their attorneys.

"The tract of land marked on the plat by the letters A, B, C, D, was duly granted to the said Walden, lessor of the plaintiff, by patent from the Commonwealth of Virginia, bearing date the 20th day of November, 1786.

"The said Walden and Simon Kenton executed the agreement, marked A, respecting the locating of said lands; the said agreement is made part of this cause.

"The defendants are in possession of that part of the tract marked on the plat by the letters E, F, G, C, and claim the said part of the said tract of land under the agreement A, and the indorsement thereon, and a division thereof made as certified by the report B; which report and indorsement on said agreement is also made a part of this case.

"If, upon the whole, the court shall be of opinion that the legal title to the said part of the said tract of land marked on the plat as aforesaid by the letters E, G, C, F, is in the plaintiff, then judgment to be entered for him; if not, judgment to be entered for the defendants.

"WILLIAM CLARK, *Attorney for Plaintiff.*
THOMAS TODD, *Attorney for Defendants.*

"And the court, having fully considered and understood the said case, is of opinion, that the legal title to the said part of

the said tract of land marked on the plat E, F, G, C, is in the plaintiff, and was on the day of filing the declaration in this suit.

"It is therefore considered by the court, that the plaintiff recover against the said defendants, Lewis Craig and Amzel Chapin, his term of and in the premises aforesaid, with the appurtenances, yet to come and unexpired, together with his costs by him in this behalf expended; and the said defendants in merey, &c.

"And on motion of the plaintiff, by his attorney, the United States writ of *habere facias possessionem* is awarded him in this suit, to cause him to have possession of the terms aforesaid, returnable to the next court."

The judgment in ejectment in favor of Walden did not therefore include the tract of land marked C, or any land outside of the locator's part, for which only the defendants took defence.

Thus far, the claim of the heirs of Walden, and the grounds of defence of the defendants, have been stated as to those parts of the tract of land which the Circuit Court refused to give to Walden's heirs.

It remains now to state the proceedings of that court with respect to the parts of the tract which were given to those heirs, and which are designated upon the preceding plat by the letters, D, E, and F.

The Circuit Court gave these lands to Walden's heirs upon certain conditions, which will be mentioned consecutively, and from this part of the decree Walden's heirs also appealed. —

D. The decree of the Circuit Court was as follows: —

"It therefore seems to the court that, on this proceeding against Benjamin Umstead, one of the complainants in the original bill, the heirs of Walden must have awarded to them the possession of the parcel of land designated, in the report of the surveyor filed herein at the present term, by the figures 2, 21, 22, 12, 13, 14, 16, 17, 18, 19, 20, 2, and as containing one hundred and forty-nine acres, twenty-eight poles, now in his possession, when he, Umstead, shall have been paid the amount which the value of the improvements upon the land exceeds the rents and profits and damages thereof, or it shall be ascertained that there is no such excess on the account to be taken. It does not appear that Umstead has had the possession of any other part of the land since the commencement of these proceedings; and as to the residue of the land in the proceeding, it is dismissed, without prejudice as to the parcel of land designated on the plat by figures 21, 3, 22, and 21, containing,

according to the surveyor's report, fourteen acres, two roods, and thirty-six poles, sold by Umstead, as represented in 1813, and now in the possession of the widow of William Craig."

E.   The decree of the Circuit Court with respect to this piece of land was as follows : —

"It seems to the court that the Waldens will be entitled, on the proceedings against the defendant, John N. Proctor, to have the possession of the land designated on the plat by the figures 15, 16, 17, 18, 19, 20, 15, and as containing nineteen acres, three roods, and twenty-eight poles, in his possession about the time of the commencement of this proceeding, but now in the possession of Jeremiah Wells.   Proctor was not a party to the original bill, but he appears to have purchased this parcel of the land, and to have acquired the possession of it from Sandridge, one of the complainants in the original bill, pending the suit ; and when the value of the improvements shall have been paid, or found compensated by the rents, profits, and damages of the land, according to an account which will be taken, the Waldens will be entitled to an order for process of possession.   It does not exactly appear when Wells acquired the possession of this land ; but he is no party, and unless his position be such as to bind him, he shall not be concluded in respect to any right or claim he may show in respect to the matter to be effected."

F.   The decree of the Circuit Court with respect to this piece of land was as follows : —

"It seems to the court, that the Waldens will be entitled against the defendant, Thomas Blair, to have the possession of the land designated on the plat by the figures 4, 12, 13, 14, 4, and as containing fourteen acres, three roods, and eight poles. It is found in the possession of Blair, claiming to hold it by purchase from Pogue, one of the original complainants.   He does not show when he made the purchase, or acquired the possession, and the fair conclusion is, that he obtained the possession pending the litigation.   He must, therefore, surrender it when he shall have been paid the amount which the value of the improvements exceeds the rents and profits, with the damages, on the account which will be taken, or it shall appear that the result of such account must be against him."

When this cause was here in 1840, it was held that, as Walden had been decreed to surrender possession, and make releases of his elder legal title to complainants for so much of the land in controversy as their better right in equity covered, the proper condition imposed on complainants by such decree in their favor was, that, having received their measure of equity, they were compellable to do equity to the defendants ; and

that therefore they should be constrained to surrender possession to Walden's heirs of that part to which their ancestor had the better title : and as this had not been ordered by the Circuit Court in the decree made in 1834, (then before us on appeal,) it was so ordered by this court in 1840, as a proper addition to the decree made below; and the cause was sent down to have our mandate executed in this respect. In attempting to do so, it is insisted on part of Walden's heirs, that the Circuit Court erred to a material extent, and they have prosecuted their appeal to this court to correct the errors, and we are now called on to construe and execute our own mandate; beyond this, we have no power to go, more than the Circuit Court had. What that court ought to have done, it is our duty to do. The mandate directed the Circuit Court "to take such further steps in regard to the improvements, and to the putting of Walden or his representatives in possession of the premises recovered in the ejectment suits, as shall be conformable to the decrees hereby affirmed, and to the principles of equity."

Beyond the land recovered in the ejectment, we have no power to act under this mandate ; nor to those parts of the land recovered, which were by the decree of 1834 vested in complainants and divested out of Walden. It follows, that the parcel on the plat marked C. 11, 30, 31, 32, 11, is not in the case now before us, it lying outside of the tract recovered in the ejectment suit ; as to this parcel, the Circuit Court adjudged correctly, when executing the mandate, and therefore the decree is affirmed in this respect.

The parcel as found on the plat marked A. 1, *a, b*, 4, 5, 6, 11, 1, next presents itself for our consideration. It was occupied by Kincaid, claiming in some form under John N. Proctor ; and the Circuit Court held that Proctor had acquired the better title thereto, by force of the act of limitations, which had barred Walden's right to recover it ; and therefore the claim on part of Walden's heirs to have possession thereof surrendered to them was rejected. And the inquiry is, Did the statute of limitations operate in Proctor's favor ? Jonathan Rose took possession under Lewis Craig. Rose was sued in ejectment, and recovered against, in 1800. By some executory contract, Jonathan Rose sold to Jonathan H. Rose, before 1817 ; and the two Roses seem to have held a joint possession, until they sold to Proctor in 1826. He took possession in 1827, and the two Roses made him a joint deed in 1828. In May, 1824, the demise in the ejectment suit was extended to fifty years, commencing in 1789. The suit then stood as if the demise had been originally laid for fifty years.

Of this step, neither Jonathan Rose nor Jonathan H. Rose could legally or justly complain. Proctor came in by purchase in 1827, and Kincaid afterwards. Then the ejectment suit was in full force against all these parties. Nor is there any thing in the fact that Jonathan Rose took a deed from Bodley and Pogue in 1821, seeking shelter under their inferior title. And this reduces the inquiry to the question, whether Proctor and Kincaid were bound by the proceedings against Jonathan Rose? Walden had the legal title and right of possession. The ejectment suit was pending, and Walden delayed and hindered from obtaining the fruits of his judgment by the acts of Jonathan Rose; of this pending litigation, purchasers from Rose were bound to take notice; and they were bound as alienees, *pendente lite*, by the proceedings in the suit, after the alienation, as Jonathan Rose was bound. This is the general rule. Long *v.* Morton, 2 A. K. Marshall, 40; Hickman *v.* Dale, 7 Yerger, 149. And so is the rule in equity likewise. Story's Eq. Pleading, 287. If it were true, that, when a recovery was had for land, the party in possession, and from whom the land had been recovered, might sell out and transfer his possession to another, and the latter could not be reached by a writ of possession, then there could be no end to litigation, as the land might be transferred on each successive recovery. And to hold that the alienee might avail himself of the act of limitations, and thereby defeat the action, or its fruits, by execution, if he and his vendor could, by bills of injunction, or other unjust contrivance, keep the plaintiff out for seven years, would equally violate the principle, that he who buys *pendente lite* must abide the judgment or decree against his alienor, regardless of the fact whether such purchaser was or was not a party to the suit.

Up to May, 1839, the judgment in ejectment was in full force against Proctor, Kincaid, and the Roses; then the demise expired. In 1840, this court ordered that Walden's heirs should be put into possession of the land recovered, because the legal remedy had ceased. That order proceeded on principles governing a court of equity; that it was a decree in effect against these parties, for the land above described, is our unanimous opinion; and the Circuit Court having held otherwise, we direct the decree of that court, in this respect, to be reversed, and order that Walden's heirs be put into possession of the parcel of land marked A. 1, *a*, *b*, 4, 5, 6, 11, 1, on the plat, of which the one here presented is a copy.

The next parcel claimed by Walden's heirs, to which their claim was rejected by the Circuit Court, is lot B, marked 15,

14, 5, 6, 11, 15, of 15 acres, 1 rood, and 7 poles, and defended by Thomas Blair. In tracing title of this tract, a material defect exists in the statement made by the Circuit Court. It was part of the Hambrick tract, and purchased by Robert Pogue from Abram Shockey after the recovery in ejectment; at what precise time, does not appear. Blair alleges in his first answer, that it was sold by Walden to A. Chapin, and by Chapin to Pogue; but in a second answer, Blair alleges that Pogue purchased of Shockey, and that Shockey was then in possession; "and that said possession was regularly continued through Pogue, Tilton and Huston, Hambrick, and Fitzgerald to your respondent, Blair."

The surveyor's return explains the matter as follows:—

No. 1. "15, 14, 5, 6, 11, 15. That part of the Hambrick tract lying within the locator's part, now in the possession of Thomas Blair, who holds title under Thomas Fitzgerald by deed in 1832. Tilton and Huston were contractors with Robert Pogue for this, and the residue of the Hambrick tract they sold to Hambrick, and he afterwards to Fitzgerald, who obtained a conveyance from Pogue about the year 1829. Statement of Thomas Blair. This part of the Hambrick tract contains 15 acres, 1 rood, and 7 poles, by survey."

No. 2. "11, 30, 31, 32, 11. The balance of the Hambrick tract in the possession of said Blair outside of the locator, said to contain 30 acres covered in common by Walden's two surveys."

No. 3. "4, 12, 13, 14, 4. Represents 14 acres, 3 roods, and 8 poles, within the locator, in the possession of said Blair, held by purchase from Robert Pogue, who held under Lewis Chapin. No title or conveyance has yet passed. Statement of said Blair. This tract has never had a regular tenant upon it. Statement of Jos. Duncan."

This return stands undisputed, and from it the answer of Blair may be explained. No. 2 (11, 30, 31, 32, 11) is that parcel of 30 acres lying outside of the land recovered by the ejectment, and with which we have no power to interfere, as already stated, being lot C on the annexed plat.

No. 3 (4, 12, 13, 14, 4), including 14 acres, 3 roods, and 8 poles, is the land derived through Lewis Chapin by Robert Pogue; and this tract is not in controversy now.

But No. 1, marked B, for 15 acres, 1 rood, and 7 poles, is land of which Pogue obtained possession from Abram Shockey; and Pogue was a principal party to the bill of injunction staying the judgment at law. In the ejectment, this latter parcel B was recovered against Shockey; and when the demise was

extended, in 1824, the judgment was in full force against him, and those holding the possession under him. Thus the matter stood when Blair purchased and took possession in 1833. From this time upwards to 1839, Blair was subject to be evicted by a writ of possession, to which Walden, or his heirs, had an undoubted right; and to lands thus situate the mandate of this court extends, for the reasons already stated, in regard to the parcel marked A, and defended by Proctor and Kincaid. It is therefore ordered, that Walden's heirs be put into possession of the parcel marked B, for 15 acres, 1 rood, and 7 poles; and that the decree of the Circuit Court in regard thereto be reversed.

And as respects all other parts of the decrees and orders made by the Circuit Court, in execution of our mandate, we hold the same to have been proper, in so far as such decrees and orders awarded possession to Walden's heirs, or rejected their claim to have possession; and said decrees and orders are hereby affirmed, with the modification hereafter stated, as respects the putting of Walden's heirs into immediate possession; and also as respects the mode of proceeding to recover rents and profits, or for value of improvements.

And it is further ordered, that this cause be remanded to the Circuit Court, with directions that Walden's heirs and representatives be put into the possession of all the parcels of land awarded to them under the mandate, either by the Circuit Court or by this court, on or before the 1st of January next; and it is further ordered, that such possession shall be delivered to Walden's heirs or representatives, regardless of the fact whether claims for improvements or for mesne profits exist on the one side or the other; the intention of this court being to give possession to Walden's heirs and representatives in the same manner that a writ of *habere facias possessionem* would do when executed, so that they may have the benefit and advantages of their judgment at law.

And it is further ordered, that any party on whom this decree operates, who claims compensation for improvements made on the land, or on any parcel thereof, may file his petition before said Circuit Court, setting forth his claim to compensation for such improvements; and that said heirs or representatives of Walden may answer the same, and be allowed to set off mesne profits arising because of the possession of the parcel of land on which said improvements are alleged to have been made; and that, in deciding on such controversy, said Circuit Court shall be governed by the rules appertaining to a court of equity in such like cases.

And it is further ordered, that the heirs and representatives of Walden shall have the corresponding right to file their petition against any claimant holding possession, and who has been a party to this proceeding, or who may hold under such party by transfer of title made since the date of the mandate of this court, for any rents and profits that can be equitably claimed for the occupancy and use of said respective parcels of land ; and to adjudge and decree among the respective parties as equity may demand. Nor shall cross petitions for value of improvements, and for mesne profits on the other hand, be required ; but the court may hear the whole matter on petition and answer, and decree for either side for any balance, after one demand is set off, in part, against the other, on an account stated.

And it is further ordered, that the appeal brought here by said Walden's heirs, to reverse the decree dismissing the cross-bill filed, 25th November, 1834, by Ambrose Walden, and the amendments and other proceedings in said cross-bill, and which are found in record No. 96 of this court, be dismissed ; and that the decree of the Circuit Court dismissing the same be, and the same is hereby, affirmed ; and that the appellants, the heirs of Walden, pay the costs of said appeal.

And it is further ordered, that the appellees, John N. Proctor and Thomas Blair, against whom decrees for lots A and B have been made, and who are the principal appellees, pay the costs of the appeal on record No. 95 of this court, containing the proceedings had before the Circuit Court when executing our mandate of 1840, and that said Proctor and Blair pay said costs by moieties ; that is, one half thereof each.

And as respects the parcel marked D on the plat accompanying this decree, being for forty-nine acres and twenty-eight poles, defended by Benjamin Umstead in the Circuit Court, and which said court adjudged should be surrendered to Walden's heirs, it is ordered and decreed, that said parcel be delivered to Walden's heirs by said Umstead on or before the 1st of January next. And that in other respects said decree against Umstead be affirmed, except that in proceeding for improvements he shall be governed by the rules that other defendants are.

And as respects the parcel of fourteen acres, two roods, and thirty-six poles, represented to be in the possession of the widow of William Craig, and designated on the plat by the figures 21, 3, 22, and 21, it is ordered and adjudged that all further proceeding under the mandate shall be barred, and no further steps be allowed as to said parcel, because said widow

of William Craig has in no wise been made a party to the proceeding, and it is now too late to bring her before the court.

And as respects the parcel marked E on the plat, containing nineteen acres, three roods, and twenty-eight poles, designated by the figures 15, 16, 17, 18, 19, 20, and 15, defended by John N. Proctor, and which was adjudged by the Circuit Court to be by him surrendered to Walden's heirs, it is ordered that said parcel shall be surrendered accordingly on or before the first day of January next, and that in this respect said decree is deemed to be conclusive against Jeremiah Wells and all others claiming under Proctor; and that, therefore, so much of said decree as leaves the controversy open to let in Jeremiah Wells further to litigate be, and the same is hereby, reversed. Reserving, however, to said Wells the right to come forward, if he has any interest or claim for the value of improvements, in the same manner that said Proctor might do, according to the principles and in the mode above prescribed. This decree is founded on the fact that Proctor appears to be the owner, and he defended before the Circuit Court; and nothing appears in the record to show that Wells has any claim to the land, nor that he had been in possession for such length of time as to bar Walden's right to demand possession from him.

And as respects the parcel F on the plat, of fourteen acres, three roods, and eight poles, designated by the figures 4, 12, 13, 14, 4, defended by Thomas Blair, and which the Circuit Court ordered him to surrender to Walden's heirs, it is ordered and decreed that said parcel be surrendered to the heirs of Walden on or before the 1st of January next; and that so much of said decree as allows said Blair to retain possession until the value of improvements, &c., be taken, be, and the same is hereby, reversed. But that said Blair shall be allowed to file his petition, and to seek payment for his improvements, on the general principles above stated. And on petitions being filed for the value of improvements, service of notice on the counsel of Walden's heirs shall be sufficient service.

And as to all matters respecting the payment of costs, not disposed of in the Circuit Court, it is ordered that said court proceed to take cognizance thereof, and make decrees and orders therein.

## Order.　No. 96.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Kentucky, and was argued by counsel. On consideration whereof, it seems to this court that there is no error in

5 *

the decree of the said Circuit Court, dismissing the cross-bill filed 25th November, 1834, by Ambrose Walden, and the amendments and other proceedings on said cross-bill. Whereupon, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.

### Order. No. 95.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Kentucky, and was argued by counsel. On consideration whereof, it appears to this court that that part of the decree of the said Circuit Court, in the case between Thomas Bodley's heirs, Robert Pogue's heirs, and others, complainants, and Ambrose Walden's heirs, defendants, on a mandate from this court that the heirs of Ambrose Walden were not entitled to obtain, in the proceeding against John N. Proctor, the possession of the parcel of land designated on the plat of the survey by the letters and figures 1, a, b, 4, 5, 6, 11, and 1, is erroneous and should be reversed; and also, that that part of said decree, that the said heirs of Walden were not entitled to obtain in the proceeding against Thomas Blair the possession of the parcel of land in his possession, designated in the report of the surveyor by the figures 15, 14, 5, 6, 11, and 15, containing fifteen acres, one rood, and seven poles, is erroneous, and should be reversed; and that the residue of the said decree should be affirmed, with the modifications stated in the opinion of this court, in this case, at this term. Whereupon, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause, for the errors aforesaid, and to the extent thereof, be, and the same is hereby, reversed and annulled; that the heirs of Ambrose Walden recover a moiety, or one half, of their costs, on this appeal in this court, of and from the said John N. Proctor, and the other moiety, or half, of and from the said Thomas Blair, and that they have executions against them severally therefor; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to that court to carry into effect the opinion of this Court (hereto annexed, and made part of this mandate), and for such further proceedings to be had herein as may be in conformity to this opinion, and as to law and justice may appertain.