### MERRICK & FENNO VS. HUTT.

It was not the intention of the statute (*Dig.* 893) to make the tax-title, derived from the Auditor, valid against all objections; but to make the Auditor's deed *prima facie* evidence of title; and cast upon the assailant of the tax-title, the burden of proving that any requisite of the law had not been complied with.

It is not necessary that the Auditor's deed, for land sold for taxes, should contain recitals: it is sufficient if it describe the property sold and the consideration, and convey to the purchaser all the right, title, &c., of the former owner and of the State.

The particular land taxed stands liable for the tax, no matter who may be the owner, or into whose hands it may pass: and the sale is valid, if regular in other respects and the taxes were due and unpaid, no matter in whose name the land may have been assessed and advertised.

An attachment levied upon land, which has been struck off to the State for non-payment of taxes, only binds such interest as the owner had at the time, which is a right of redemption within two years.

An attachment on land does not divest the owner of his general property, but constitutes a lien from the time of the seizure; of which all persons are bound to take notice: it is, however, subject to all liens existing at the time.

*Appeal from Pulaski Circuit Court in Chancery.*

Hon. WILLIAM H. FEILD, Circuit Judge.

TRAPNALL and PIKE & CUMMINS, for the appellants. Proceedings by attachment, under our statute, (*sec.* 8, 4 3, *ch.* 17, *Rev. St.,*) are proceedings *in rem*. The latter section expressly contemplates the property from the levy of the writ to a sale under execution, as remaining in the custody of the law.

Without such express provision, the statute would have received the same construction. By the seizure, the *property* is taken and held within the jurisdiction of the court, in the same manner, so far as the property is concerned, as is done in an admiralty proceeding, or where a court of chancery seizes property to be administered or disposed of. *Senhorn vs. Kittzedge*, 20 *Verm.* 632; *Kane vs. Pilcher*, 6 *B. Monr.* 651; 7 *Engl.* 564.

It follows from this principle, that the title of a purchaser under an attachment, *relates* to the levy of a writ, and cuts out all junior liens, incumbrances or purchasers. 12 *Ala.* 838; 20 *Verm.* 187; 17 *Conn. R.* 67; 13 *Mass.* 73.

The following cases show fully the nature of the lien created by, and the effect of, a levy by an attachment: 1 *Litt.* 307; 5 *Monr.* 73; 1 *Story Eq.* 393; 1 *J. C. R.* 556; 4 *id* 609; 2 *Dana* 408-9; 3 *Atkins* 356; 1 *McLain* 95; 17 *Pick.* 271; 1 *Ala.* 678; 4 *S. & M.* 578; 19 *Pick.* 544; 4 *Dev. & Bat.* 388; 6 *Shep.* 231; 7 *How. Miss.* 658; 5 *Greene* 453; *Pick.* 341. ]

Because it is a proceeding *in rem*, wherein the property is seized openly by judicial process, forming part of the records of the country, to which all have access and of which all are bound to take notice, and over which the court has control—all the proceedings from the levy to the final sale of the property, have the force, credit and sanctity of judicial records—of the acts and judgments of the *court* itself. They stand in every respect in the attitude of the judgments of superior courts. They cannot be im-

peached, or irregularities be inquired into *collaterally*. *Borden et al. vs. State, use, &c.*, 6 *Eng.* 519; *Merrick & Fenno vs. Avery, Wayne & Co., Mans. Op. Janig. T.* '54 ; 20 *Verm.* 632; 5 *Watts & S.* 473; 6 *Barr* 272; 1 *Brev* 468.

The seizure of real estate operates as *notice* to the world. 17 *Conn. R.* 278; 6 *Iredell* 233; 7 *How. Miss. R.* 658.

No act of the debtor can in any way affect the title, after a levy. 17 *Conn. R.* 278; 8 *Ala.* 606; 4 *Dev. & Batt.* 388; 4 *Smed. & Marsh.* 579; 7 *Gill & John.* 421.

No change of possession occurs in attachments of real estate. 16 *Mass. R.* 405; 13 *Mass.* 130.

Any one purchasing the property after a levy of an attachment, is a purchaser *pendente lite*, and takes subject to the lien of the attachment. 5 *Monr.* 86; *Meux. vs. Anthony*, 6 *Eng.* 411; 7 *Eng.* 564, 565.

Hutt comes into possession with notice of the subsisting proceedings, and takes subject to the lien and title to grow out of it, which reaches back and takes priority over any demand or claim of his to the property. He is estopped in law to deny or controvert this. He purchased *in law*, for the value of the property, *less* the incumbrance, which he had a right to discharge. In other words, he was a mortgagor in possession, subject to be sold out, if the debt were not paid. This is precisely the position he occupies in the case. Of course a mortgagor cannot acquire any title adverse to the owner of the incumbrance: any title acquired enures to the benefit of the mortgagee. The same rule applies to other tenancies. 5 *Yerg.* 379; 9 *Verm.* 37; 3 *B. Monr.* 619; 3 *Ham.* 294; 1 *A. K. Marsh.* 330; 2 *A. K. Marsh.* 366; 6 *Verm* 602.

He cannot set up title in a third person. 6 *John. R.* 34; 5 *Wend.* 246; 7 *John. R.* 151.

A vendee, or those claiming under him, are estopped in an action of ejectment to show title in himself or a third person, as against the vendor. 7 *Cow.* 637, 717; 7 *Wend.* 407.

A tenant cannot resist his landlord's recovery in virtue of a title

obtained during his lease. 2. *Binn.* 468; 1 *Dana* 14; 10 *John.* 292. So of under tenant. 4 *Bibb.* 33; 1 *A. K. Marsh.* 245.

A trustee can acquire no title adverse to that of his *cestui que trust.* 6 *Dana.* 176.

See, at large, the various relations which forbid, on grounds of policy and good faith—as in cases of trustees, agents, &c., &c., purchases by one person to the prejudice of another. 1 *White & Tudor's Eq. Cas.* 72 *to* 118.

As to the duty of tenant to pay taxes—his inability to buy in a tax-title for his own benefit—which inability of course extends to any *holder* or purchaser, going in *pendente lite*—we need only refer to 7 *Eng.* 563, &c., 586, 583, and cases cited, 7 *Engl.* 519.

Where a party comes in *pendente lite*, with his eyes open, he makes himself a trustee—he forces the other parties to accept him as trustee—to hold the property to answer on the close of the litigation. Of course, like all other trustees in possession, he would have a valid claim against the successful party for all necessary outlays in respect to the property, payable out of the rents, or otherwise. 1 *J. C. R.* 566.

Purchasers under attachment, stand in place of litigating parties—obtain by the purchase all their liens, privileges, and immuties. 1 *McLean* 95.

The forfeiture of the lot at the tax sale, was void: 1st, Because Stark had ample personal estate, out of which the taxes could have been made; and he made no demand on Stark, who lived on the lot; 2d. The sheriff did not, by the levy upon Starke's personal estate, attempt to enforce the collection of the taxes; 3d, That the sheriff made no levy upon said lot as Starke's; 4th, It was never advertised according to law. *Digest, chap.* 139, *secs.* 48, 69, 90; *ch.* 69, *sec.* 52; *ch.* 139, *sec.* 90, 88, 155.

Our statutes make no change in the *nature* of tax-titles. They say what shall be good evidence, *prima facie*, of a valid tax-title. The burden of proof is thrown upon the party who would impeach the title. But any irregularity properly established, which would invalidate a tax-title elsewhere, would destroy it here.

A sale of land is void if there be personal property from which the taxes could be made. 12 *Ala.* 617; 3 *Yerg.* 355; 4 *Blackf.* 70.

No title can be valid but upon a strict compliance with the law; even want of notice to an occupant after deed made, avoids sale. 16 *Wend.* 550; 5 *Hill* 286.

Failure to demand taxes on premises, and make same out of personalty, avoids sale. 7 *Cow.* 88.

Want of proper notice of sale, or a sale on a day different from the one fixed, avoids the sale. 10 *Ohio* 139.

It is useless to cite particular examples. The law must be strictly complied with, or the proceeding is a nullity. *Hogins vs. Brashears,* 13 *Ark.* 242; 25 *Maine R.* 359; 18 *Verm.* 470; 1 *Doug.* 119.

WATKINS & CURRAN, for appellee. The first point we make in this case, is, that no lien was created by the levy of the attachment; because the attachment was not levied according to law, as appears by the return of the officer, who did not go upon the premises, and there declare in the presence of a citizen, &c. *Dig.*, ch. 17, sec. 8; *Gibson et al. vs. Wilson et al.,* 5 *Ark.* 422.

The return of the officer upon a writ of attachment, is the only record evidence of the lien; and the return must show that every requisite of the statute, which is mandatory and not directory merely, has been complied with; and no lien attaches unless the return shows that the officer has made the levy in the manner directed by the statute. See *Cheshire vs. Briggs,* 2 *Metc. R.* 486; 5 *Mectf. R.* 517; *Cox. vs. Johns, Verm.* 65; *Kettleridge vs. Bellows,* 6 *N. Hamp. R.* 399; 5 *N. Hamp. R.* 275. And the objection may be made by any subsequent purchaser or attaching creditor. 11 *Metcf. Rep.* 244.

Even if the levy created a lien, that lien was not connected with, or continued by, the judgment, for the reason that there was no judgment condemning the land. *Den ex. dem. Amyett vs. Backhouse,* 3 *Murph. N. C. Rep.* 63.

The appellee cannot, in any sense, be held to be a purchaser

*pendente lite.* He purchased the lot, went into possession, and paid the consideration, before the defendant in the attachment had notice, actual or constructive, of the suit. It is not the levy of the attachment, but the service of the notice on the defendant, that creates the *lis pendens. Denn's Lessee vs. James & Gilbert,* 1 *McLean R.* 328; 14 *Peters* 333; *Sandford vs. Dick,* 17 *Conn. R.* 213.

But we confidently submit that Hutt was the absolute owner of the property in virtue of his tax-title. The lot was regularly assessed in the name of Daniels, and forfeited for non-payment of taxes, and sold at Auditor's sale, and purchased by Hutt. It makes no difference, under our statute, whether land is assessed in the name of the true owner or not. It is the duty of every proprietor to see that his land is properly taxed, and the taxes paid, (*Dig. ch.,* 139, *sec.* 115); and if he fails to pay, and the land is advertised and not sold, for want of bidders, it is forfeited to, and all the right, title and claim of the former owner is vested in, the State. (*Ib., sec.* 116.) No levy is necessary; and, in this case, every requisite prescribed by the statute, was complied with. The case of *Hogins vs. Brashears,* is not in point, because it appeared on the face of the deed that the sale was made on a day not authorized by law.

A tenant or trustee in possession, cannot purchase in an outstanding title, and use the same against his landlord or *cestui que trust:* but Hutt held in his own right, paid the purchase money, obtained an absolute deed, and cannot be said to be a tenant, and may well rely upon his tax title. *Blight's Lessee vs. Rochester,* 7 *Wheat. R.* 535; *S. C.,* 5 *Cond.* 335; *Warden et al. Bodley,* 14 *Peters Rep.* 162; *Jackson vs. Harsen,* 7 *Con. R.* 323; *Walker's Ex. vs. Ogden,* 1 *Dana* 250.

Starke had no interest in the lot, at the time the attachment is claimed to have been levied—consequently nothing was attached. The land was forfeited to the State, and the title transferred to her.

Hon. S. H. HEMPSTEAD, Special Judge, delivered the opinion of the Court.

The lot in controversy appears to have been taxed, for 1840, in the name of James Daniels as a non-resident, as well as in the name of James T. Starke, as a resident of Pulaski county. The latter was the equitable owner of the lot; but the legal title was in Darwin Lindsey. It does not appear that James Daniels had any right to the lot. He was, however, a non-resident, and the lot seems to have been regarded as non-resident property. After advertising it as such, it was offered for sale for the taxes of 1840, at the time and place prescribed by law, and was forfeited to the State in the name of Daniels. The collector, in his settlements for that year, received credit for the taxes charged on the lot.

The taxes for 1840, were not paid on it by any one, either as the property of Daniels or Starke, nor do any steps appear to have been taken that year to collect the taxes from the latter, who is proved to have been able to pay them.

The lot remained unredeemed for two years, and, on the 13th of February 1843, was sold at Auditor's sale, to Hutt, the defendant, who received the usual deed, and under which he asserts paramount title. He has been in actual possession of the lot since January, 1842, having then purchased it from Starke, for a full and valuable consideration, and, as far as appears, without actual notice that there was any incumbrance upon it, of any description whatever. He purchased it for a family residence, paying two thousand dollars, its full value, and took a deed directly from Lindsey to himself; Lindsey not having made title to Starke, although the latter had paid the purchase money. A. B. Bailey, on the 22d of July, 1841, sued out of the Pulaski Circuit Court, a writ of attachment against Starke, which was executed by seizing this lot as the property of Starke; and various proceedings being had, judgment was finally obtained in December, 1845, and the lot was sold under a special execution, on the 19th of October, 1846, and the complainants became purchasers at the sum of twenty-one dollars, and claim to be the owners of the lot.

43BB

The statute expressly declares that Auditor's deeds shall vest in the grantee, his heirs, or assigns, a good and valid title, both in law and equity, and shall be received in all courts in this State as evidence of a good and valid title in such grantee, his heirs, or assigns, and shall be evidence that all things required by law, to be done to make a good and valid title, were done both by the collector and Auditor." *Digest* 893.

A more comprehensive provision could hardly be found, and it might seem, at first view, to make the tax title, derived from the Auditor, valid against all objections. But that was not the design. The evil to be remedied was, that the entire burden of proof was cast on the purchaser to show that every requisite of the law had been complied with, and the deed of the officer was not even *prima facie* evidence of the facts therein stated. The general and prevailing principle was, that to divest the owner of land by a sale for taxes, every preliminary step must be shown to be in conformity with the statute; that it was a naked power not coupled with an interest, and every prerequisite to the exercise of that power, must precede it; and that the deed was not *prima facie* evidence that these prerequisites had been observed. *Williams vs. Peyton's Lessee,* 4 *Wheat* 77; *Stead's Executors vs. Course.* 4 *Cranch* 403; *Rollendorf vs. Taylor,* 4 *Peters* 349; *Gains vs. Stiles,* 14 *Peters* 322; *Bloom vs. Burdick,* 1 *Hill* 130; *Sharp vs. Spier,* 4 *Hill* 76; *Leygett vs. Rogers,* 9 *Barb.* 407.

The intention and scope of the statute were to change this rule, so far as to cast the *onus probandi* upon the assailant of the tax title, by making the deed *prima facie* evidence of title in the purchaser; subject to be overthrown by proof of non-compliance with the substantial requisites of the law. *Steadman vs. Planter's Bank* 2 *Eng.,* 425; *Jackson vs. Morse,* 18 *John* 440. And the Supreme Court of the United States so held in passing upon our statute in the case of *Pillow vs. Roberts,* 13 *How. S. C. R.* 472; 7 *Eng.* 822.

Proof then that any of the substantial requisites of the law have been disregarded; or that the taxes have been paid, no

matter by whom, would be sufficient to destroy the tax title, (18 *John.* 440,) whether emanating from the Auditor or Collector. And so where it appears, from the deed itself, that any substantial requisite of the law has not been observed, the deed can have no effect, and the sale is void. *Moore vs. Brown,* 11 *How. S. C. R.* 424. As where a sale is made at a different place from that prescribed by law, or on a different day, as was the fact in *Hogins vs. Brashears,* (13 *Ark.* 242,) or by a person not having authority to sell, or without notice. In these, and like cases, the deed could not be operative, and so could not be regarded as *prima facie* evidence of title.

The deed of the Auditor, is not required to contain recitals. All that is necessary is, to describe the property sold, and the consideration, and convey to the purchaser all the right, title, interest, and estate, of the former owner; as well as all the right, title, interest, and claim, of the State to the land. (*Digest* 893.) The deed to Hutt conforms to this provision, and was duly executed, acknowledged, and recorded. The objection principally urged against his title is, that Daniels was not the owner of the lot at all, and that it was improperly taxed in his name, and that the sale to Hutt was void. But the statute answers that objection, by declaring, that "no sale of any lands or town lots, for the payment of taxes, shall be considered invalid on account of its having been charged on the tax book in any other name than that of the rightful owner, if such land or lot be in other respects sufficiently described in the tax book, and the taxes, for which the same is sold, be due and unpaid, at the time of such sale." *Digest* 889.

This provision is founded in sound policy. In the new States, where lands are cheap and abundant, and there is an almost entire absence of that strong attachment to the soil, which exists in a striking degree in older communities, conveyances of real estate are constantly made from one to another. The owner to-day ceases to be so to-morrow. If it were necessary to go into questions of actual ownership, the land taxed would indeed be in a

precarious condition, since changes of ownership, either real or simulated, would render the collection of a tax difficult, if not impracticable.

The name of the owner is comparatively unimportant.   The description of the land in such manner as that it may be identified, and the non-payment of the tax, are the two considerations of the most importance in a tax sale.   Indeed, the latter is vital, because no matter how formal and exact the proceedings may have been whenever it is made to appear that the taxes have been paid by any one, the sale is utterly void.   The authority to sell is founded on the fact of non-payment.  The statute intended to divest the title of the former owner for the non-payment of the tax, and for that only.

The particular land taxed, stands liable for it, no matter who may be owner, or into whosoever hands the land may pass.    The State has, by express legislation, made the tax on lands a charge against them, notwithstanding any change of title by deed, judgment, or otherwise (*Digest* 885.)   And this is not only constitutional, but entirely proper, in any point of view, in which it may be considered.   It is a proper preference for a State to give herself, in order to insure certainty in the collection of the means necessary to carry on the government.   The legal effect of it is to make the State first creditor for the taxes, and give her a lien on the land, paramount to all individual claims or pretensions. It is a charge which attaches  to the thing under all circumstances, and, without exception, to be discharged only by payment. No judicial proceeding can impair, displace, or postpone, this lien ; nor can it be done by the acts of parties.   Payment alone is effectual to discharge it, and relieve the land from the incumbrance.

Taxation should not be regarded with odium; nor should courts, by injurious and astute construction, attempt to evade the force of the revenue law; but, on the contrary, give it a fair and liberal interpretation, and countenance only such objections as apply to the real merits of the case.   (13 *How. S. C. R.* 476.)   If the stat-

ute is to be enforced at all, this objection to the title of Hutt, acquired at tax sale, cannot prevail; for it was to meet such cases, that the provision was made as to taxing property in the name of a person not the true owner.

The attachment of Bailey was levied on the lot, on the 22d of July, 1841, after the lot had been struck off to the State, as the property of Daniels. The attachment only bound such interest as Starke had in the lot at the time, which was a right of redemption, within two years, as former owner." *Digest* 889. After the expiration of two years, he had no such right; and the land was subject to be sold by the Auditor in the manner prescribed by law. Any person who has a legal or equitable interest in land sold for taxes, is properly considered the owner for purposes of redemption. (*Black vs. Percifull*, 1 *Ark.* 473.) There can be no doubt that Bailey, the plaintiff in the attachment suit, had such an interest as to justify him in redeeming, in order to make his attachment effectual, and to relieve the lot from a prior charge, of which all persons were bound to take notice. It would have been analogous to the case of a subsequent encumbrancer, who discharges a prior one to protect his own and make it available. But neither Starke nor Bailey, redeemed, nor offered to redeem; nor were the taxes of 1840, paid, until the purchase by Hutt, of the Auditor, in 1843. Whatever right Starke had, was forfeited, and the purchasers of the lot under execution, succeeded to no greater right than he possessed.

It follows that the tax title of Hutt was paramount; unless he occupied such a position as to inhibit him from purchasing on his own account, and for his own benefit.

It is a general rule, that the tenant is not allowed to dispute the title of his landlord. The same relation subsists between a trustee and the *cestui que trust*. Nor can the tenant, in the one case, nor the trustee, in the other, purchase outstanding titles for their own benefit, to be set up against those for whom they hold. (14 *Peters* 162.) And yet the rule is subject to exceptions. If the tenant disclaims the tenure, and claims the fee in his own

right, of which the landlord has notice, the relation of landlord and tenant is ended, and the tenant becomes a trespasser, and is liable to be turned out of the possession, though the period of his lease has not expired. ( 3 *Peters* 47 ; 14 *Peters* 162.) But it is difficult to perceive how Hutt can be held as a tenant or trustee. He had purchased the lot, and had received a conveyance as purchaser, and certainly between himself and Starke, no other relation than that of vendor and vendee subsisted. He held adversely, not under him. In *Blight's Lessee vs. Rochester*, (7 *Wheaton* 548,) Chief Justice MARSHALL, delivering the opinion of the court, said: " The propriety of applying the doctrines between lessor and lessee, to a vendor and vendee, may well be doubted. The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor, are intended to be extinguished by the sale, and he has no continuing interest in the maintainance of his title unless he should be called on, in consequence of some covenant or warranty in his deed. The property having become by the sale the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises. No principle of morality restrains him from doing this ; nor is either the letter or spirit of the contract, violated by it. " 14 *Peters* 162 ; 3 *Littell* 34 ; 4 *Littell* 274 ; 7 *Cowen* 323.

That Hutt was a trustee for Bailey, cannot be seriously insisted on. No fiduciary relations existed between them; and, under the circumstances of the case, to imply a trust would be to take one step beyond the shadowy boundary of constructive trusts, already extended beyond any safe and reasonable limits, and, in many instances, as easy to imagine as they are difficult to define.

If it was the duty of Hutt to pay the taxes accruing while he was in possession, it was certainly not his duty to pay those which accrued before that time for the benefit of any other person than himself; and so whether a tenant must pay taxes and assessments, is a question quite foreign to the case in hand, and

the authority to that point, cited by the appellant's counsel, has no application. Hutt cannot be considered in the light of a purchaser *pendente lite*. The true position he occupies, is that of purchaser under proceedings to obtain the satisfaction of a first incumbrance, and pending which a subsequent incumbrance attaches. To say that he is a purchaser *pendente lite*, under the second, would be to reverse the natural order of things, and postpone the first to the second incumbrance, and utterly destroy it. This cannot be tolerated.

The law requires the owners of land to see that the taxes are paid; and if they neglect it, they, or any one claiming under them, have no right to complain of the consequences of their own negligence. If, for disregarding this first and highest obligation a citizen owes the State, the loss of his property, charged with the tax, shall seem a disproportionate penalty, it must be remembered that to excuse it would produce the most serious embarrassments, if it did not eventually work the destruction of civil government itself.

As has been said, the lien of the State for taxes is paramount, under all circumstances; and hence, no suit or *lis pendens* between individuals can affect the right of the State to sell for taxes, and which may not inaptly be assimilated to a proceeding *in rem* in admiralty, in which the whole world, it is said, are parties, and the condemnation binding on all who have an interest in the thing. 9 *Cranch* 144.

The right to sell does not depend on the fact whether the property is taxed in the name of the rightful owner, but on the fact that the taxes are due and unpaid; and that the land is charged with them, to which charge or lien all claims and pretensions must yield, and of which all persons must take notice at their peril.

It is undoubtedly true, as argued by the counsel for the appellants, that an attachment on land constitutes a lien from the time of the seizure, of which all persons are bound to take notice; closely resembling, in that respect, a proceeding *in rem* in ad-

miralty. All who deal with regard to land attached, must do so subject to this lien, and the litle of the purchaser under attachment relates to the levy of the writ, and gives him priority over all intervening liens, incumbrances or sales. 1 *McLain* 95; 7 *Peters* 464; 1 *Ala.* 678; 8 *Ala.* 606.

And although Hutt does not appear to have had actual notice of the attachment in this case, yet that could not protect him, for he was chargeable with constructive notice; and, were it not for the tax title, acquired at the Auditor's sale, the title of Merrick & Fenno would have to prevail; not because Hutt could not purchase from Starke after the levy of the attachment, but because it would be a junior incumbrance. An attachment constitutes a lien, merely, upon the land; but the general property of the owner is not divested, and he may just as well sell, subject to that lien, as any other. The effect of the sale is to pass the general property incumbered by the attachment. If that is extinguished by the settlement or failure of the suit, the purchaser will hold free of the incumbrance. It never was doubted that real estate under attachment might be conveyed, as well as if unincumbered. *Arnold vs. Brown,* 24 *Pick.* 95; 3 *McLain* 355; 6 *Humph.* 151.

The attachment, however, is subject to all claims, liens, incumbrances, or charges existing against the land at the time, and these may render the attachment entirely ineffectual.

That is the precise predicament of the lot in question. It had been charged with the tax of 1840, and had been struck off to the State when the attachment was levied. Supposing Starke had an interest in the lot, subject to attachment, but having failed to redeem, and the attaching creditor having failed to do so, the prior lien for the taxes ripened into a perfect tax title in Hutt, the defendant, and thus rendering the attachment unavailing, and as Hutt has the paramount title, the decree dismissing the bill should be affirmed.