No. 7.—THOMAS BYRNE, plaintiff in error, *vs.* AMOS LOWRY, defendant in error.

[1.] A took possession of the land of B, and kept possession for a while. H then left the land, with the intention of returning to it the next year and resuming possession, and went to his home, which was *in another county*, and resided there until near the end of the next year, when he returned to the land and resumed possession of it : *Held*, that during the time of his absence from the land, the Statute of Limitations did not run in his favor, and that it only began to run in his favor at the time when he returned to the land.

Ejectment, in Cobb Superior Court. Tried before Judge TRIPPE, March Term, 1855.

An action of ejectment was brought by Thomas Byrne, against Amos Lowry. Defendant relied upon the Statute of Limitations. The process was dated 24th July, 1849. The proof was, that one Isaac G. Albritton, who lived in Frank-

lin County, in 1841, came out to the land and cut house-logs, and then returned home, and in the latter part of the year 1842, he came back and put the logs up and lived there. Albritton sold to Lowry, who went into possession and continued so ever since. Albritton cut the logs in full view of the road, and about one hundred and fifty yards from the road. Much other testimony was introduced, not relevant to the question decided in this Court.

Upon the question of "continuity of possession" in Albritton, the Judge below charged, that the Jury must be satisfied, from the evidence, that the possession of the defendant and those under whom he claimed, was not only adverse and uninterrupted, but also continuous; that it is not necessary that the defendant and those under whom he claims, should be every day, or week, or month, upon the land, to constitute continuous possession; and by way of illustration, the Court observed to the Jury, if a farmer were to sow a field in wheat and reap it at harvest, and take off the wheat, and exercise no other acts of possession of the field, not even to the pasturing of his cattle upon it, the fact that he was not actually upon the premises from the summer, one year, till the spring of the next, (no other person being, in the meantime, in possession,) would not, of itself, be any evidence of a breach of the continuity of possession; that his return to it and planting his corn on it in the spring, would be evidence conducing to prove that he did not intend to abandon the possession, but that he intended to retain it. If, however, the farmer should leave the premises for a single day, with the intention of abandoning the possession of them, it would be a breach of the continuity of his possession of them; therefore, the *quo animo*—the intention with which one enters on land, leaves it and again returns to it, is often an important matter for Juries to consider, in determining as to the continuity or breach of the possession of it; and his intention is to be determined from all the facts in proof before them. The Court further charged the Jury, that in this case, if they were satisfied, from the testimony, that Albritton, under

Byrne *vs.* Lowry.

whom defendant claims, cut house-logs, split boards and hauled them up to the place of building, then went off the land, with the intention of returning and completing the house, and not with the intention of abandoning the possession of the land, and did return to it the next fall, (there being no other person in possession of the land in the meantime,) completes the house and put his family into it, and live upon and cultivate the land, until he sold it to defendant; and that defendant has been in possession ever since, that the Jury might find that there was no breach of the continuity of the possession of the defendant and of Albritton, under whom he claims; and if the Jury, under these instructions of the Court, should be satisfied that the defendant and those under whom he claims have been in uninterrupted, continuous adverse possession of the land sued for, for seven years before the commencement of this action, they should find for the defendant; if not, they should find for the plaintiff the premises in dispute.

To this charge, plaintiff excepted.

McDonald, for plaintiff in error.

Hansell, represented by Cobb, for defendant.

*By the Court.*—Benning, J. delivering the opinion.

[1.] It seems that Albritton first took possession of the land in 1841; but that after remaining in possession of it a while he, in the same year, left it and went back to his residence in the County of Franklin, and resided there until the latter part of the year 1842, when he returned to the land in Cobb and resumed possession of it; and that he has kept possession of it ever since.

The question is, did the Statute of Limitations run in his favor, during the interval when he was so residing in the County of Franklin?

And the answer to that question depends on the answer to

another, viz: this—when did the right to bring *this* suit ac-crue to the plaintiff or the plaintiff's lessor?

And in respect to the answer to this question, it may be said that the right to bring this suit or to bring any action of ejectment against Albritton, as tenant, did not exist du-ring the time when he was away from the land, residing in Franklin; because, whilst he was thus absent, the owner had no need of any redress by suit. He might have redressed himself by his own act. If he had simply *entered* on the land and taken possession of it, as he might well have done, he would have been as effectually redressed as he could have been had he been put in possession by the Sheriff, acting un-der a writ of possession, issued from a judgment in ejectment. (3 *Black. Com.* 5, 174.) And because, secondly, the owner not only had no need of any redress by suit, but he had no way of obtaining any redress by suit. He could not have sued Albritton, because, as the land lay in Cobb County, the suit would have had to be in that county; and as Albritton, during that time, was in the County of Franklin, and was residing in the County of Franklin, he could not have been served with any suit which was in Cobb; and therefore, he could not have been sued in Cobb.

The right, then, to bring this suit, did not exist during the interval when Albritton remained in the County of Franklin. And if it did not exist during that interval, it could not have accrued until the termination of that interval, and that was not until the return of Albritton to the land.

Our conclusion then is, that the plaintiff's right to bring this suit did not accrue until the return of Albritton to the land. But that return was within seven years next before the commencement of the suit.

To hold the contrary would be to hold, that if A should, under color of title, take possession of the land of B as his own, and hold it for a day, and then should leave it, with the intention of returning to it at the end, say of seven years, and should, in the meantime, keep himself out of the way of a suit, as by remaining in some foreign country, and should,

at the end of the seven years, return to the land, and finding things as he left them, resume possession of it, he would, under the Statute of Limitations, be able to retain the land against the true owner.

We think, therefore, that the Court should have charged the Jury, that the Statute of Limitations could not run in favor of Albritton during the interval when he was in Franklin County, residing in that county. And therefore, we think there ought to be a new trial.