## SCOTT v. MILLS.

1.  TITLE BY POSSESSION: *How acquired: Evidence of.*

    Where the plaintiff, to maintain his action to recover a tract of land, relies upon seven years' adverse possession under color of title, he must show that such possession was continuous and unbroken for the full period prescribed by the statute of limitations; and evidence that he took possession of the land, and, after deadening the timber on part of it, left it, and exercised no other act of ownership over it except to pay taxes, is not of itself sufficient to establish a title by possession.

2.  FORFEITED LANDS: *Deed for prima facie evidence of title.*

    A deed executed by the Commissioner of State Lands, for lands forfeited to the State for the non-payment of taxes, is by the provisions of the statute (*Mansf. Dig., sec. 4246,*) under which it is executed, made *prima facie* evidence of title in the purchaser to the lands conveyed, and that everything necessary to vest title in the State was done. It is therefore error to find such deed void from a certificate of the Clerk that he could not find in his office certain records, or evidence, as to the assessment and forfeiture of the lands.

APPEAL from *Lonoke* Circuit Court.

F. T. VAUGHAN, Judge.

*John C. & C. W. England* for appellants.

The court erred in declaring the law as asked for appellees, and in refusing to declare as asked by appellants.

1.  To maintain title by limitation there must be actual, visible, open, notorious and continuous adverse possession under claim of title for the full period of limitation. There must be no abandonment. See *Sedg. & W. Tr. of Title to Land, secs. 725, 728, 735, etc.; 27 Ark., 93; 61 Tex., 171; 14 Wall., 146.*

2.  The court erred in declaring appellant's deed void. The first, second and third grounds can in nowise affect appellants' rights, and the fourth and fifth are mere irregularities. *Mansf. Dig., sec. 4475; 46 Ark., 96.*

Scott v. Mills.

The certificate of the Clerk was not admissible as evidence.

*S. R. Allen* and *T. J. Oliphint* for appellees.

The court properly declared the law for appellees. *34 Ark., 598; 38 id., 181.* Possession once shown will be presumed to be continued until abandonment, disseizin or ouster is shown.

Possession of part under color of title is possession of the whole. *8 Cr., 229.* A void deed gives color of title. *34 Ark., 547.*

BATTLE, J. This was an action instituted by William E. Woodruff, Sr., and Anderson Mills, against Anthony and Albert Scott, for the recovery of certain lands in Lonoke county. Plaintiffs, to maintain their action, relied upon seven years' adverse possession under color of title. The color of title was sufficiently shown. Their right to recover depends upon the sufficiency of the evidence of adverse possession. The evidence on this point is : The plaintiff, Mills, in 1870 or 1871, took possession of the land and deadened the timber on about sixty-eight acres, and paid the taxes on it from 1870 to 1876, inclusive. Plaintiffs did nothing on the land after making the deadening. After the payment of the taxes of 1876, it seems, they paid no attention to the taxes. Mills, however, testified he always claimed the land and never intended to abandon it.

The defendants relied on a deed from the State. The land was forfeited in 1878 on account of the non-payment of the taxes of 1877. Not having been redeemed within two years after the forfeiture, it was certified by the Clerk to the Commissioner of State Lands as lands forfeited to the State. On the 27th of August, 1880, the defendants purchased it and the Commissioner of State Lands conveyed it to them by deed.

This deed was introduced and read as evidence on the trial. Evidence was also introduced showing that defendants took possession under it and cleared and put into cultivation a part of the land, and were in possession at the commencement of this action. The only evidence introduced to show the invalidity of the deed was a certificate of the Clerk of Lonoke county to show that the assessment and forfeiture of this land for the taxes of 1877 was illegal, in which he certified he could not find in his office any record or evidence of the following facts :

" 1.    Oath of Assessor before entering on duties.

" 2.    Abstract of land in the county subject to taxation for 1876 delivered to Assessor by Clerk.

" 3.    Notice of Collector [under section 5165, Gantt's Digest,] that he would meet the tax-payers, etc.

" 4.    Notice of Clerk [under section 5185, Gantt's Digest,] of sale of delinquent lands.

" 5.    No proof of publication of notice of sale, except the certificate of Clerk that the same was made.

" 6.    No certificate of Collector as to sale.

" 7.    No record showing that Collector offered the lands by beginning at northeast corner of the tracts."

The court refused to declare the law, at the request of defendants, as follows :

" 1.    That when one claims title by limitation he must show, first—actual, visible, open and notorious possession in himself, and that such actual, visible, open and notorious possession has continued peaceably and uninterruptedly for a period of seven years; and that, therefore, before the plaintiffs can recover herein they must establish by positive proof that they have had the actual, open, peaceable, adverse and continuous possession of said land, either in person or through their

agents or employes, for a period of seven years, without break or interruption; and that the mere going upon the land and deadening a part thereof, and afterwards paying the taxes thereon, is not sufficient evidence of itself to establish such possession.

"2. That if the evidence in this case shows that plaintiffs went upon said land in 1870 and deadened a part thereof, and then left said land, and did not re-enter upon it again for a period of seven years from 1870, and they exercised no other acts of ownership over it except to pay taxes, their plea of title by limitation fails, and they cannot recover."

But declared it, at the instance of plaintiffs, as follows:

"1. The court declares the law to be that possession once established by material acts of visible, notorious ownership must be presumed to continue until open, notorious and adverse possession be proven to be taken by another.

"2. That the tax deeds of plaintiffs, although void upon their face, are competent evidence to show color of title, and to define the boundary of plaintiffs' claim to title under the statute of limitation.

"3. That the possession of lands under deeds for the statute period of a part of said tracts described in them confers title to the whole."

The court, sitting as a jury, found that plaintiffs acquired a good title to the land by seven years' adverse possession under color of title, and that defendants' deed was void:

"1. Because Assessor did not, before entering upon the duties of his office, take and subscribe to the oath required by law.

"2. Because there is no proof that the land was advertised as required by the statute.

"3. Because there is no certificate of the Collector as to the sale of the lands.

" 4.   Because there is no notice given by Collector under section 5165, Gantt's Digest, that he would meet the tax-payers, etc.

" 5.   Because there was no notice by the Clerk under section 5185, Gantt's Digest, of sale of said lands.

" 6. ,  Because it does not appear that the lands were offered for sale by the Collector beginning at the northeast corner of said tracts."

And the court rendered judgment for the lands in favor of plaintiffs.   Defendants, after filing motion for new trial and saving exceptions, appealed.

In support of the action of the court in refusing to declare the law as asked by appellants and declaring it as asked by appellees, *Clements v. Lumpkin, 34 Ark., 598*, is cited.   Appellees call our attention to the fact that Mr. Justice EAKIN, in delivering the opinion of this court in that case, said:   " The possession of Topp's vendee, once established by material acts of visible, notorious ownership, which was done by putting negroes upon it, and making a deadening long known afterwards as the Lumpkin deadening, must be presumed to have continued, until open, notorious and adverse possession be shown to have been taken by another."   In order to understand what was meant by this remark, it is necessary to know the facts in that case.   The facts are as follows:   The heirs of John W. Lumpkin, deceased, sued the heirs of Robertson Topp, deceased, for specific performance of a title bond to convey a tract of land, executed by Topp to Lumpkin, in the lifetime of both.   Clements was made a defendant.   He was charged with claiming a part of the land in controversy under color of an invalid title.   The prayer of the complaint as against him was to remove a cloud from the title of plaintiffs.   He denied the validity of plaintiffs' title, set up his own claim of title, and relied upon adverse possession and the statute of limitations.   In order to sustain their action against Clements, it was

Scott v. Mills.

necessary for plaintiffs to show that Topp had the title to the land and they were in possession. This court first found that Topp had the title. It then proceeded to say: "They (plaintiffs) show then the title bond from Topp to their ancestor, and prove, with reasonable certainty, that said ancestor, about the year 1854, entered into possession of said land, and deadened a large area, for clearing." Having shown that Topp had the title and Lumpkin purchased of him, and under his contract of purchase took possession, it follows that he and his heirs were entitled to possession until they were ousted, and holding under the legal title it was presumed they remained in possession until the contrary was shown. In connection with this fact, when considering Clements' title by adverse possession, this court said: "The possession of Topp's vendee, once established by material acts of visible, notorious ownership, which was done by putting negroes upon it, and making a deadening long known afterwards as the Lumpkin deadening, must be presumed to have continued, until open, notorious and adverse possession be shown to have been taken by another," and proceeded to show that Clements had not ousted plaintiffs by any acts of open, notorious and adverse possession.

Plaintiffs, in that case, made no effort to show title acquired by adverse possession, and any remarks made to show that they had would have been superfluous. All the court meant to say was, the plaintiffs having taken possession under the legal title were presumed to remain in possession until open, notorious and adverse possession be shown to have been taken by another. For the rightful owner is deemed to be in possession until he is ousted or disseized. This is the result of the well-settled principle of law that possession follows title in the absence of any possession adverse to it, and that there can be but one actual seizin of the same estate at one and the same time.

Appellees rely upon *Wilson v. Spring, 38 Ark., 181,* in which it is said : " We think the presumption a fair one, that a possession under color of title, once adversely taken, has continued in the grantee, and passed to his grantees in turn. Any interruption of it must be shown by the other party. Otherwise it would be necessary to make some proof of possession each day. If the land had been in fact abandoned, or there had been any interruption of the possession in Spring and his grantees it devolved on defendants to show it." The rule announced is only a rule of evidence, and it is unnecessary for the purposes of this case, to stop to inquire into its correctness, as the facts in this case are proven and not left open to presumption.

The question as to what is necessary to constitute an abandonment of possession was considered by the court in *Sharp v. Johnson, 22 Ark., 84.* That case was an action of ejectment. It was contended that the action was barred by the statute of limitations. The defendant claimed under one Cunningham. He relied on the possession of Cunningham to sustain his defence under the statute of limitations. The evidence was, that Cunningham had possession of an inclosed field on the land in controversy from the spring of 1840, by himself or tenants cultivating it and keeping up the fences about it, till 1848, when he left the place, remaining absent from it and not holding it by cultivation or occupancy of himself, or others, in the years 1848 and 1849.

Mr. Justice FAIRCHILD, in delivering the opinion of this court in that case, said : " During the interval of two years, Cunningham must be taken to have been out of the possession of the field, and of the land ; for the evidence is satisfactory that he did nothing to keep it in repair, in use, or in possession. The fence had fallen down, as the witness, who testified upon the subject, says, that when Cunningham returned to the place in 1850 he rebuilt the fence, and that the

fence was kept up about it from 1840 to 1852, except during the years 1848 and 1849.

The place was then abandoned by Cunningham, was vacant for two years, and whatever the legal effect of such vacancy and of the abandonment of Cunningham may be, it is to be applied to him, as he knew and adopted the consequences of his act, or will be held by the law to have so done.

And it is well settled that the possession upon which the statute of limitations will operate for the holder must be an unbroken, continuous possession ; that if there be an interruption of holding, the term of adverse possession is closed, and upon a resumption of possession, a new point is made from which limitations will again begin to run. *Angell on Lim., ch. 31, sec. 84; Potts v. Gilbert, 3 Wash. C. C. R., 478; Doe v. Campbell, 10 John., 477; Pederick v. Searle, 5 Serg. & Rawle, 240; Andrews v. Mulford, 1 Haywood, 320; Doe v. Ridley, 1 N. C. Rep., 282; May v. Jones, 4 Litt., 23.*

It is only then a possession from 1850, that Cunningham, or his representatives, or the defendant, their tenant, can date from as the beginning of a defence from being in possession; which of course is no defence to a suit begun in 1852.

And this results from the fact of abandonment, which is evidence to the world of the intention of him who leaves his occupancy. What secret wish, or anticipation, he may indulge of returning, and reasserting his yielded claim, none but himself can know. Or, if he should assert his claim to be a continuing one in his absence, that would not make it any better for him, for although, in aid of possession, the law will presume it to be well founded, and will respect as rights, interests that have become ancient, a claim of possession without the fact agreeing therewith, is not to be recognized by law as productive of right, or as capable of having connected with it any interest."

Scott v. Mills.

1. TITLE BY POSSESSION: How acquired: Evidence of.

The adverse possession necessary to vest title in the holder must be continuous and unbroken for the full period prescribed by the statute. "Adverse possession," says Mr. Justice GIBSON, in *Stephens v. Leach, 7 Harris, 262,* "professing as it does to be founded not on title but on trespass, is essentially aggressive, and the stamp of its character must always be preserved by acts on the premises. A man does not discontinue his possession by locking up his house in town, or suspending his cultivation in the country, provided he do not suffer the buildings in the one case, or the fields in the other, to be thrown open; but he is bound to continue a positive appearance of ownership, by treating the property as his own, and holding it within his exclusive control. An intention to resume suspended intrusion of which the owner of the title may know nothing, is short of the requirements of the statute. The question is not, what did the outgoing occupant intend, but what did he do? Did he keep his flag flying and present a hostile front to adverse pretensions? An adverse possession ought to be such as to challenge the right of all the world; but when an occupant has evacuated the place and suffered it to go to wreck, he hauls down his colors and his challenge is withdrawn." In other words, when one leaves the ground personally, during the period of limitation prescribed by the statute, he must leave it under circumstances indicating that he has not left the possession, but still holds it. He must so leave it that the condition and appearance of the premises themselves show to the world that there is still a person in actual control and exercise of dominion. If he should leave the premises, personally, but not in the condition or manner indicated, before the expiration of the time psescribed by the statute of limitations, he acquires no title by adverse possession. *Byers v. Danley, 27 Ark., 92; Ringo v. Woodruff, 43 Ark., 486, 487; Williams v. Wallace, 78 N. C., 354; Susquehanna, etc., Railroad Co. v. Quick, 68 Pa. St., 189; Byrne v.*

*Lowry, 19 Ga., 27; Joiner v. Borders, 32 Ga., 239; Virgin v. Land, id., 572; Holliday v. Cromwell, 37 Tex., 437; Tegarden v. Carpenter, 36 Miss., 404: Sedgwick & Wait on Trial to Title to Land (2d ed.), sec. 744,* and cases cited.

The court below, therefore, erred in refusing to declare the law as asked by appellants.

The next question presented for our consideration is, what was the effect of the deed relied on by appellants as evidence? The statutes under which this deed was executed provide that "immediately after the expiration of the two years allowed for the redemption of lands sold for taxes, the Clerk shall make out a certificate of sale to the State for all land purchased by the State, as shown by the records of such tax sale in his office which have not been redeemed, and cause the same to be recorded in the Recorder's office of the county, and thereupon the *title* to all lands embraced in such certificate shall vest in the State; and the Clerk shall immediately transmit such certificate to the Commissioner of State Lands, and thereupon the said lands shall be subject to" private sale at fifty cents per acre; and that the Commissioner of State Lands, upon selling the same, and immediately after filing in his office of a receipt showing that the full amount of the purchase money has been paid into the State Treasury, shall execute to the purchaser a quit-claim deed in behalf of the State to the land; and that such deed shall be received as evidence in any court of the State. Evidence of what? Manifestly of title to the land conveyed. The statute having provided that the title to the land forfeited shall vest in the State upon the performance of certain acts by the clerk, it is clear that the object of the Commissioner's deed is to convey that title to the purchaser from the State and that the deed was intended to be *prima facie* evidence of that title.. Such has been the policy of the State, as a general rule, in respect to tax deeds long prior to and at all times since the enactment of the statutes under

1. FORFEITED LANDS: Deed for, *prima facie* evidence of title.

which appellant's deed was executed.  It was in pursuance of this favorite policy that the deed of the Commissioner of  State Lands to lands forfeited for taxes was made *prima facie* evidence of title in the  purchaser to the lands conveyed.  As of all such legislation, the object is to  relieve the grantee and those holding under him from  making  proof until  evidence is introduced showing or tending to show that the deed conveyed no title.  *Acts of 1874–5, p. 227, sec. 19;  Acts of 1875, p. 95, sec. 6; Mansf. Dig., sec. 4246.*

It was not, therefore, necessary for appellants to have proved that all things necessary to  vest  title in the  State was  done. Their deed was *prima facie* evidence of that fact.   The certificate of the Clerk that he could not find in his office certain records or evidence did not overcome this *prima facie* evidence. The only effect of it, if admissible for any purpose, was to show that so much of such records or evidence  as was  required  to be filed or of record in the Clerk's office was lost.   The truth is, a part of this evidence which the Clerk certified  could not be found in his office was not required to be filed there, and a part, if not all, of it was immaterial and could not affect appellants' title.   How far it is  immaterial is unnecessary for us to decide at this time.

The Circuit Court erred in finding from the evidence before it that appellants' deed is void.

For the errors indicated the judgment of the court below is reversed and this cause is remanded for a new trial.