CRACRAFT v. MEYER.

Opinion delivered July 29, 1905.

1. AUDITOR'S DEED OF FORFEITED LAND—PRESUMPTION.—The effect of the act of March 5, 1838, providing that a deed of forfeited lands executed by the Auditor "shall be evidence that all things required by law to be done to make a good and valid sale were done both by the collector

and Auditor," was to cast the burden of proof upon the assailant of a tax title acquired from the Auditor by making the deed *prima facie* evidence of title in the purchaser. (Page 453.)

2.  LAND COMMISSIONER'S DEED—EFFECT.—When the office of State Land Commissioner was created in 1868, and the control and disposition of forfeited lands were conferred upon him, instead of upon the Auditor, the laws previously applicable to the Auditor's deeds, including the statutory presumption in favor of their regularity, became applicable to the deeds of the Land Commissioner. (Page 455.)

3.  SAME—REQUISITES.—A tax deed executed by the State Land Commissioner, which names the purchaser, describes the property sold, states a consideration, and contains apt words conveying all the right, title and interest of the State, is *prima facie* evidence of title in the purchaser, although it does not contain recitals showing that the requisite steps have been taken to give the State title. (Page 455.)

4.  SAME—WHEN PRESUMPTION NOT OVERCOME.—The statutory presumption in favor of a tax deed executed by the State Land Commissioner is not overcome by proof that the land was once held by the State as Real Estate Bank land, being exempt from taxation while so held, and that the record of deeds does not show any conveyance from the receiver of the Real Estate Bank or from its successors. (Page 456.)

5.  REAL ESTATE BANK LAND—EVIDENCE OF SALE.—Under the act of February 6, 1867, exempting the lands of the Real Estate Bank from taxation while in the hands of the receiver, and requiring the receiver, upon their sale, to furnish the assessor "with the correct list thereof for assessment in the name of the purchaser," it will be presumed, where lands of the bank were listed for taxation, that they had been sold. (Page 457.)

6.  SAME—Where the receiver of the Real Estate Bank reported that he was convinced that his predecessor had sold certain lands, the original deeds having beeen exhibited to him, and such report was confirmed by the court, such report and confirmation are evidence that the land was sold. (Page 457.)

Appeal from Chicot Circuit Court.

ZACHARIAH T. WOOD, Judge.

Affirmed.

*B. F. Merritt, J. F. Robinson* and *Rose, Hemingway & Rose,* for appellant.

1. No interlocutory proceeding constitutes *res judicata.* 1 Freeman, Judg. 325. The difference between orders which work no estoppel and judgments is explained in 11 Enc. Pl. & Pr. 828; 56 S. W. Rep. 971; 11 S. W. Rep. 950. Mere orders create no estoppel. 75 N. Y. 599; 1 Cow.

482; 35 Pac. 796; 45 Pac. 724; 76 Fed. 761; 108 *Id.* 564; 34 Ala. 135; 14 Gratt. 48; 86 Va. 625; 6 How. Pr. 321; 24 Kans. 442; 104 Ind. 373; 33 Minn. 419.

2. The admissions of appellee as to appellant's title make a *prima facie* case, and cast the *onus* on him to show a better title in himself or a stranger. There is no showing that the State abandoned or parted with her title. The deed of the Commissioner did not pass the State's title, and she is not estopped by her tax deed. Kirby's Dig. § 4914. The State's rights have always been protected against the erroneous and unauthorized acts of her officers. 75 Ark. 146; 39 Ark. 315; 56 *Id.* 276; 64 *Id.* 576; 33 *Id.* 17; 39 *Id.* 580; 40 *Id.* 251; 42 *Id.* 118; 54 *Id.* 251; 62 *Id.* 188.

*N. B. Scott, E. A. Bolton, Garland Streett* and *Jas. P. Clarke,* for appellees.

Any rights of appellant were derived from act May 23, 1901, p. 360, § 1. This act does not include the lands claimed by appellant. *Scott* v. *Mills,* 49 Ark. 226; 19 Ark. 262; 4 Ark. 592; 38 Ark. 574; 45 Ark. 81. Being a proceeding analogous to the action of a probate court in authorizing a sale of lands of an intestate, it is essentially *in rem,* and can be invalidated only by some direct proceeding in time by some one who has a right to question same. 19 Ark. 499; 44 Ark. 267. Worthen was acting as an officer of court, and when his action was confirmed it became the act of the court. 57 L. R. A. 910. Title will be presumed after long lapse of time. 1 Gr. Ev. § 45; 120 U. S. 534; 56 Ark. 84.

*P. C. Dooley,* also for appellees.

The authority of the commissioner to sell does not rest alone on the act of 1901, *supra,* which is an amendment to section 4678 Sand. & Hill's Dig. See § § 4622-3-7, Sand. & Hill's Dig. The sole issue is, were the lands the property of the State when the alleged forfeiture occurred under which Mrs. Myers claimed? If so, the forfeiture was a nullity. Sand. & Hill's Dig. § 4675. The action was final unless set aside by a judgment of a court having jurisdiction. Sand. & Hill's Dig. § 4670. The conduct of the land office shows no intention to abandon. State officers are the agents of the State whose

power of authority is the statutes of the State, beyond which they are powerless to bind the State. 23 Ark. 642; 23 Ark. 610; 54 Ark. 269; 98 U. S. 433. Nor will the State be bound by the mistake or unlawful acts of its officers. 40 Ark. 526; 95 U. S. 316. See also 49 Ark. 266; 75 Ark. 146; 40 Ark. 256; 93 U. S. 689. The State is not estopped to deny the acts of its officers beyond their authority. 54 Ark. 269, 270, 271. The burden was on Mrs. Meyers to show a conveyance by some one authorized by law ·to make it before 1874. 41 Ark. 97.

B. F. Merritt, J. F. Robinson and Rose, Hemingway & Rose, for appellant in reply.

.The act of 1901 authorized the sale of the land. Sec. 4914, Kirby's Dig. The only presumption in case of a tax deed is that the forfeiture was legal. 42 Ark. 118. It will not be presumed that the State made a grant. 92 U. S. 343. Appellant was not barred. 45 Ark. 81. When a party takes expressly subject to another claim, his possession will continue in subordination till he disclaims and asserts hostile possession. 56 Ark. 492.

WOOD, J. Appellee is in possession of certain tracts of land in Chicot County, Arkansas, under deeds from the State Land Commissioner based upon a forfeiture of the land for the non-payment of taxes. Her deeds are dated December 24, 1891, and July 23, 1897, respectively. She has made valuable improvements, and has been in the adverse possession of the lands since the deeds were executed.

Appellant brought ejectment against appellee for the lands in controversy, claiming title by deed of the State Land Commissioner dated July 14, 1902, based upon an alleged Real Estate Bank foreclosure.

First. As early as March 5, 1838, our Legislature passed an act requiring the Auditor to execute deeds to purchasers of lands forfeited to the State for the non-payment of taxes, and prescribing that such deeds "shall convey to the purchaser all the right, title, interest and claim of the State thereto"; also that the deeds "shall vest in the grantee, his heirs or assigns, a good and valid title, both in law and· equity, and shall be received in all courts of this State as evidence of good and valid title in such grantee, his heirs or assigns, and shall be evidence that all things required by law to be done to make good and

valid sale were done both by the collector and the Auditor."
Rev. Statutes, c. 128, § § 133, 134.

In *Steadman* v. *Planters' Bank,* 7 Ark. 427, this court, pass-
ing upon this statute, said: "Our statutes have changed the
rule of law that it is incumbent upon the purchaser of lands
sold for taxes to show that the sale was regular, and that the
prerequisites to the sale existed and were strictly complied
with. The · Auditor's deed, executed in accordance with the
provisions of the statute, vests in the purchaser all the right,
title, interest and estate of the former owner in and to such
lands and also all right, title, interest and claim of, the State
thereto, and is declared to be evidence in all courts of this
State of a good and valid title in such grantee, his heirs, and
assigns, and that all things required by law to make a good and
valid sale were done both by the collector and Auditor." In
*Merrick* v. *Hutt,* 15 Ark. 331, this court, speaking of this
statute, said: · "A more comprehensive provision could hardly
be found, and it might seem, at first view, to make the tax title
derived from the Auditor valid against all objection. But that
was not the design. The evil to be remedied was that the en-
tire burden of proof was cast on the purchaser to show that
every requisite of the law had been complied with, and the deed
of the officer was not even *prima facie* evidence of the facts
therein stated. * * * The intention and scope of the statute
was to change this rule, so far as to cast the *onus probandi*
upon the assailant of the tax title by making the deed *prima
facie* evidence of title in the purchaser, subject to be over-
thrown by proof of non-compliance with the substantial re-
quisites of the law." In *Patrick* v. *Davis,* 15 Ark. 363-6, it is
said: "In the same category may be included that capital pro-
vision of the· statute, according to the legislation of several of
the States, which, when the deed is regular upon its face, re-
verses the *onus probandi,* and subjects the tax title, when thus
sustained, to be overthrown only by proof of a nonconformity
in the proceedings to· some one of the substantial prerequisites
to the sale." In *Biscoe* v. *Coulter,* 18 Ark. 423, it is held "that
the Auditor's deed for land forfeited for the non-payment of
taxes and sold under the statute is to be treated in the courts.
as *prima facie* evidence that all things required by law to be

done to make a good and valid sale were done by the collector and Auditor; and it is incumbent upon the party assailing the title of the purchaser to *show affirmatively* a non-compliance with some substantial requisite of the law;" citing cases just quoted in 15 Ark.

When the office of Commissioner of Immigration and State Lands was created (Acts 1868, p. 62; Sched. Const. 1868, § 3), and the control and disposition of forfeited lands was was given to the Land Commissioner (sec. 9, act 1868), *ipso facto* the laws applicable to the deed of the Auditor for these lands became applicable to the deed of the Land Commissioner. *Helena* v. *Hornor,* 58 Ark. 151. And section 4 of the act of December 13, 1875 (erroneously digested as section 4 of the act of March 10, 1879, in Kirby's Digest, § 4807), continues in substance and legal effect the act of March 5, 1838, with reference to deeds to forfeited lands. That section provides that all deeds issued by the State Land Commissioner to forfeited land "shall convey to the purchaser, his heirs and assigns, all the right, title and interest of the State to said land, and that such deed shall be received as evidence in any court in the State." It will be observed that, under the statutes, deeds to forfeited lands are not required to contain recitals showing that the requisite steps have been taken to give the State title. "It is sufficient to give *prima facie* evidence of title in the purchaser if the deed names the purchaser, describes the property sold, states a consideration, and contains apt words conveying all the right, title and interest of the State." *Merrick* v. *Hutt,* 15 Ark. 331; *Walker* v. *Taylor,* 43 Ark. 543; *Thornton* v. *Smith,* 36 Ark. 508. In *Scott* v. *Mills,* 49 Ark. 266, Judge BATTLE speaking for the court, said: "The statute having provided that the title to the land forfeited shall vest in the State upon the performance of certain acts by the clerk, it is clear that the object of the Commissioner's deed is to convey that title to the purchaser from the State, and that the deed was intended to be *prima facie* evidence of that title. Such has been the policy of the State, as a general rule, in respect to tax deeds long prior to and at all times since the enactment of the statutes under which appellant's deed was executed. It was in pursuance of this favorite policy that the

deed of the Commissioner of State Lands to lands forfeited for taxes was made *prima facie* evidence of title in the purchaser to the lands conveyed. As of all such legislation, the object is to relieve the grantee and those holding under him from making proof until evidence is introduced showing or tending to show that the deed conveyed no title. It was not, therefore, necessary for appellants to have proved that all things necessary to vest title in the State were done. Their deed was *prima facie* evidence of that fact."

"Generally, when an official act has been done which can only be lawful and valid by the doing of certain preliminary acts, it will be presumed that these preliminary acts have also been done." I Greenleaf, Ev. pp. 38, 135. But the almost universal rule, in the absence of an express statute to the contrary, was to treat the acts of officers in connection with tax deeds as an exception to the general rule. Thus, one claiming under such a deed was required to show *affirmatively* that every step necessary to establish the regularity of the proceedings had been taken. Tax deeds, in the absence of a statute, did not furnish *prima facie* proof that all the requirements of the law had been complied with. 3 Elliott on Ev. § 2053, and many authorities cited in notes; *Hogins* v. *Brashears*, 13 Ark. 242. Now, as I have shown, our lawmakers, almost from the beginning of our history as a State, changed this prevailing doctrine with reference to tax deeds, and, in concrete form, applied to the deeds of the Auditor, and, later, of the State Land Commissioner, the rule applicable to official acts in general, making the deeds of these officers to forfeited lands *prima facie* evidence that all preliminary steps, necessary to title, had been taken. I have quoted liberally from our decisions, showing the significance of the rule, that it has been consistently followed, and that the policy, whether wise, or otherwise, has become firmly imbedded in our real estate law, and is a settled rule of property, upon which many titles are based. Appellee invokes the rule to protect her possession and all other rights under her deed. In this defense alone she is secure, unless appellant, having the burden of proof, has shown that some one of the prerequisites to title in appellee was omitted.

*Second.* Appellant, having a land commissioner's deed to

the lands as Real Estate Bank lands, assails appellee's title, con-
tending that at the time of the alleged forfeiture to the State
the lands belonged to the State as Real Estate Bank lands, and
were not subject to forfeiture and sale for taxes. To support
his contention, he shows that the lands passed into the hands of
the receiver of the Real Estate Bank by foreclosure proceed-
ings, and from that time, to-wit, October 23, 1867, to the date
of appellant's deed, June 14, 1902, the record of deeds of Chicot
County do not show that there had been recorded in the re-
corder's office of such county any deed of conveyance to any
person for the land in suit from the receiver of the Real Estate
Bank or any of his successors. But this evidence falls far short
of showing that the lands were not sold. Purchasers of land
often fail to place their deeds of record. If any presumption
of non-sale follows such a failure to find a deed on record show-
ing a sale, then such a presumption, at most, is but a weak and
disputable one of fact. The finding such a deed of record was
not an essential in the proceedings by which the lands were for-
feited, and title was vested in the State. Appellee might rest
here, and upon conflicting presumptions alone she would pre-
vail, because her deeds are prior in time, and the presumptions
attending them are of equal dignity and cogency with those of
appellant's deed, and it is incumbent upon appellant to overcome
her title.

But if evidence of an affirmative character were required
of appellee, "to make assurance doubly sure," certain facts in
the record would fully warrant the finding of the lower court
in her favor.

(1.) The act of 1867, exempting lands of the Real Estate
Bank from taxation while in the hands of the receiver, required
such receiver "upon sale by him of any of such lands, to
furnish the assessor of the county in which the same are situated
with the correct list thereof for assessment in the name of the
purchaser.' Section 3, act of February 6, 1867. The lands
in suit were listed for taxation as early at 1873. This tends
strongly to show that the lands were sold by the receiver after
he acquired them by foreclosure of the vendor's lien in 1867.

(2.) In a proceeding by the State in the chancery court
of Pulaski County to wind up the affairs of the Real Estate
Bank, the receiver was directed to make a list of all the lands

in his hands or subject to his control as receiver, to the end
that the same might be offered for sale preliminary to closing
the trusts.   He accordingly made such list, and on the 26th day
of October, 1880, he, as receiver of the court, was directed to
offer the same at public sale on the 8th day of January, 1881.
In making his report of the sale conducted by him as receiver,
Worthen included therein this statement: "Your receiver
found before the sale that the following land had been dis-
posed of by his predecessor, but no mention of the fact has been
made in or upon the records, *and he, being fully convinced
that the bank had disposed of its interest, by exhibition
to him of the original deeds from the receiver in some
instances, and conclusive evidence in all cases,* did.
under instructions from your Honorable Court, omit the same
from sale."   Then follows a list of thirteen tracts, in which is
included the land in controversy here.   On the 17th of January,
1881, the sale and the report thereof were in all things con-
firmed by the Pulaski Chancery Court.   After that, the estate
of the Real Estate Bank having been fully administered, the
receiver was directed to "turn over to the Commissioner of
State Lands all the accounts, books of said Real Estate Bank
now in his possession, and the mortgages given to the said bank
now in his possession, and all papers and assets in his posses-
ion, pertaining to his receivership, and take a receipt for same."
While this finding by the receiver and confirmation by the
court may not be conclusive of the facts found, and binding
upon the State or her grantees as an adjudication, yet it is evi-
dence of a high probative character, it was received and acted
upon by the lower court without objection, and tends *to
strengthen the presumption that the land was sold.*

   *Third.*   Thus far we all agree, and I have voiced the opinion
of the court.   I shall now express my own views of another
phase of the case, in which Judge RIDDICK concurs.

   The deed of the State Land Commissioner, under the ex-
press terms of the statute, and in express words, conveyed "all
the *right, title, and interest of the State to said lands.*"   In my
opinion, after the execution of the deed to the appellee by the
duly authorized and only agent of the State for conveying title
to her lands, this same agent could not convey to another pur-

chaser the same lands without first canceling the first pur-
chaser's deed, which could only be done upon proper grounds·
laid in a proper proceeding therefor, in a court of chancery. It
is the duty of the Land Commissioner, before executing deeds to
the State's lands, to investigate the sources of her title. He
is presumed to do so, and when he executes his deed he conveys
"all the right, title and interest" that the State has, provided he
has made no mistake, and no fraud has been perpetrated by the
purchaser. And if a mistake has been made, as the State is not
bound by the mistake of her agents, she may take advantage
of it, and cancel and set aside the deed made by her agent.
But there is no authority for her to sell this right, or transfer,
by her deed to another, the right to·cancel the oustanding deed
of another purchaser. The State can do no wrong, and her
agents have no power, for her, and in her name, to speculate
in lawsuits to the injury of her citizens. If she has sold her
lands for too much or too little, or her agents have made a
mistake as to the lands sold, or as to her title, she may cor-
rect the mistake of her officers. But she has no power, with or
without consideration, to transfer this right to another. Sec-
tion 759 of Kirby's Digest provides: "Where by law the Com-
missioner of State Lands is required to execute any deed of con-
veyance or patent for any lands sold, or granted by the State,
such deed of conveyance or patent, when executed by such
Commissioner under his official seal, shall convey *all the right
and title of the State in and to said lands to the purchaser,* and
may be recorded in the office of the recorder of the proper county,
and the original, or a duly certified copy of the same taken from
the record thereof, shall have the same effect as evidence as if
such deed or patent had been acknowledged and recorded under
the existing laws of this State." Act of December 31, 1850. This
statute settles this controversy in favor of appellee. It is in har-
mony with section 4807, *supra,* under which appellant claims the
deed was executed. Neither of these statutes makes any excep-
tions or places any limitations upon the interest conveyed.
And the Land Commissioner and the courts can make none.
The words *"all the right, title and interest of the State"* say
what they mean, and mean what they say. *They are plain
words.*

Appellant invokes the following statute: "No tax title shall be valid or binding against the equitable or legal interest of this State in or to any real estate whatever; but such tax titles are and shall be void, so far as the same shall conflict with the interest of the State, and shall be treated and considered as null and void in all courts." Kirby's Digest, § 4914. It is obvious, from what I have said, that such statute has no application here. It had no reference whatever to titles conveyed by the State Land Commissioner, or, if so, it is only the *interest of the State* in the land that can be affected by it. The State has parted with all her interest in this land. At least, she is not here attempting to assert any interest.

The judgment is affirmed.

BATTLE, J., not participating.